Belinda RITTER, Plaintiff–Appellant,

v.

**CECIL COUNTY OFFICE OF HOUSING AND COMMUNITY DEVELOPMENT,** Defendant–Appellee.

No. 93–2476.

United States Court of Appeals, Fourth Circuit.

Argued May 13, 1994.

Decided Aug. 23, 1994.

8 program in Cecil County, Maryland, terminated Ritter's assistance because she was housing non-family members for periods longer than two weeks. The "two-week visitation rule" was adopted by the Cecil County Housing Agency to distinguish acceptable visitation from "residency" by a non-family member, the latter requiring approval by the Agency. Ritter contends that the two-week visitation rule is not part of the statutory scheme creating the Section 8 program and that its violation cannot form a proper basis for terminating Section 8 assistance. The district court rejected her argument, granting summary judgment to the Cecil County Housing Agency. For the reasons that follow, we affirm.

I

**ARGUED:** Ann Celeste Kehinde, Legal Aid Bureau, Inc., Bel Air, MD, for appellant. Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, MD, for appellee. **ON BRIEF:** Denise Ramsburg Stanley, Allen, Johnson, Alexander & Karp, Baltimore, MD, for appellee.

Before NIEMEYER, Circuit Judge, PHILLIPS, Senior Circuit Judge, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Senior Judge PHILLIPS and District Judge HILTON joined.

## OPINION

NIEMEYER, Circuit Judge:

When Belinda Ritter's federal housing assistance, provided under the Section 8 Existing Housing Certificate Program of the United States Department of Housing and Urban Development, was terminated, she filed this action seeking an injunction to preserve the housing assistance and a declaratory judgment that her assistance was improperly terminated. The Cecil County Office of Housing and Community Development ("Cecil County Housing Agency"), the public housing agency which administers the federal Section

Belinda Ritter began receiving federal housing assistance in November 1990 under Section 8 of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f. The housing assistance program, known as Section 8 Existing Housing Certificate Program, was created by Congress for the purpose of aiding low-income families in obtaining "a decent place to live." 42 U.S.C. § 1437f(a). Under the program, Congress authorized the Secretary of Housing and Urban Development to enter into contracts with state public housing agencies (or "PHA's") and fund such agencies through annual contributions contracts for the purpose of providing rent subsidies for eligible participants. 42 U.S.C. § 1437f(b). The public housing authorities are authorized to receive applications for housing assistance from eligible persons, approve the applications, and issue a "Certificate of Family Participation" to an approved applicant. 24 C.F.R. § 882.209. The certificate entitles the holder to seek rental housing with rental maximums and specified housing quality standards. *Id.* Once an applicant receives a certificate, the applicant bears the responsibility of locating a suitable rental unit in the private sector. 24 C.F.R. § 882.103. The proposed lease between the applicant and the private landlord is reviewed by the public housing agency, and if the rental rate and

other aspects of the landlord-tenant relationship are in compliance with federal regulations, the housing authority enters into a "Housing Assistance Payments Contract" with the landlord and agrees to subsidize the rent in an amount based on the applicant's income. 42 U.S.C. § 1437a(a).

Under Section 8, the tenancy and the assistance are separate and distinct relationships. Termination of *the tenancy* by the landlord can only be for serious or repeated violations of the lease or other "good cause" as specified in the regulations. *See* 24 C.F.R. § 882.215(c). Termination of the tenancy, however, does not automatically result in the loss of Section 8 assistance. The grounds for termination of *Section 8 assistance* are specified in 24 C.F.R. § 882.210. Among the grounds listed is the provision that Section 8 assistance may be terminated if the participant "has violated any Family obligation under the Section 8 Existing Housing Program as stated in § 882.118." And § 882.118 provides, among other things, that the family must:

> Use the dwelling unit (or, in the case of Shared Housing, the portion thereof) solely for residence by the Family, and as the Family's principal place of residence; and shall not assign the Lease or transfer the unit.

The Cecil County Housing Agency regulations, approved by the Department of Housing and Urban Development ("HUD"), interpret § 882.118 to permit the applicant to have house guests for a period not to exceed two weeks.[1] It was the enforcement of this Cecil County Housing Agency regulation which prompted this lawsuit.

## II

Beginning January 1, 1993, Ritter leased 107–D Courtney Drive in Elkton, Maryland, from the Village of Courtney, which participates in the Section 8 program. She received a Certificate of Participation for the lease from the Cecil County Housing Agency, approving Section 8 assistance for her and her daughter.

In the latter part of January 1993, the Cecil County Housing Agency received information that in the middle of January, Sonia Mazza and her daughter had moved in with Ritter, apparently under an arrangement through which Ritter would receive money and services from Mazza "in exchange for room and board." The information was contained in a letter sent by Mazza's sister. In early February 1993, the Housing Authority received a similar message from Ritter's neighbor, stating, "My tax money is paying for [Ritter's] boyfriend and two others since last March. Land lady is aware of it." Finally, on February 16, 1993, the property manager for the Village of Courtney wrote to the Cecil County Housing Agency to report that Mazza, her daughter, and Ritter's boyfriend were all living with Ritter.

On February 9, 1993, Ritter and Mazza visited the Housing Authority's offices to discuss the possibility of obtaining a Certificate of Participation in the Section 8 program which would allow Ritter, Mazza and their daughters to live together. Ritter stated that she was told by the Agency that Ritter and Mazza could not obtain assistance to live together because they were not related. Ritter then discussed the possibility of going off Section 8 assistance and of obtaining a residence on her own with Mazza, but was advised not to do so because if the arrangement did not work out, the waiting period to receive Section 8 benefits again could be long. Mazza and her daughter nevertheless continued to live with Ritter.

Acting on the information that other persons not within Ritter's family were living with Ritter, the Cecil County Housing Agency terminated her Section 8 assistance. In a letter dated February 17, 1993, the director of the agency wrote:

---

1. The two-week visitation rule reads in full:

*Special Modifications*

1) All families who receive assistance from the CCHA are entitled to have house guests. Because HUD regulations do not specify the length of reasonable stay by a house guest, the CCHA will interpret "reasonable stay" as not to exceed two (2) weeks total in any one year cycle. House guests staying beyond 2 weeks should be reported to the CCHA by the family as "additional" family members. At this point, all eligibility rules and regulations shall be applicable to them.

For well in excess of the two week visitation rule, you have had three additional persons residing with you at the unit this office provides rental assistance on. I have confirmed this with the management of your apartment complex and in recent court records.

When you applied to this program for assistance, you agreed to provide the names and proof of income for all persons residing with you. This you have failed to do.

Ritter appealed the decision within the Cecil County Housing Agency and on appeal presented evidence from her boyfriend's mother that the boyfriend was incarcerated on February 12, 1993, and that before that he had been living with his mother. Other evidence, however, showed that the boyfriend admitted to Ritter's neighbor that he was living with Ritter. A visit to Ritter's apartment also disclosed a bed on the living room floor and the presence of Mazza and her daughter. Following the hearing on appeal, Ritter's Section 8 assistance was terminated, effective April 30, 1993. The landlord, however, did not terminate the lease, and Ritter continued to live in the apartment.

A month later, Ritter filed suit in the district court, based on 42 U.S.C. § 1983, alleging that the Cecil County Housing Agency failed to follow HUD regulations in terminating her Section 8 assistance; that the enforcement of the two-week visitation rule denied "her right to association and privacy in her home, in violation of the First Amendment"; and that the lack of any notice to Ritter that a violation of the two-week visitation rule would be grounds for termination denied Ritter due process of law under the Fourteenth Amendment. Ritter prayed for an injunction ordering reinstatement of her Section 8 assistance and a declaratory judgment that enforcement of the two-week visitation rule violates the United States Housing Act of 1937, as amended, and regulations promulgated thereunder, as well as the First and Fourteenth Amendments. The district court entered summary judgment denying Ritter the relief requested.

In opposing the summary judgment motion, Ritter did not contest the essential facts relied on by the Cecil County Housing Agency to terminate Section 8 assistance. She did explain, however, in an affidavit, that Mazza came to her apartment in January 1993 and told Ritter that Mazza's parents "had thrown her out and she didn't have anywhere to go." She alleged that Mazza's income and expenses were not shared and that when Mazza moved in, she brought clothing and personal items but no furniture. Ritter stated that it was never her intent to make Mazza a permanent member of her household, and that, in any event, on March 3, 1993, Mazza left 107–D Courtney Drive for good. Ritter also denied that her boyfriend had lived with her before May 1993, by which time her Section 8 assistance had been terminated.

On appeal, Ritter does not take issue with the finding that she violated the two-week visitation rule.[2] Rather, she contends that the two-week visitation rule is not provided for in the federal regulations and therefore cannot form the basis for termination of Section 8 assistance. She argues that Section 8 assistance may be terminated only in accordance with 24 C.F.R. §§ 882.210(d) and 882.-118. In addition, she asserts that she was

**2.** Ritter does argue that the district court improperly resolved certain disputed facts against her in ruling on the summary judgment motion.

She contends that the district court's finding that the purpose of Ritter's meeting with the Cecil County Housing Agency in early February 1993 was to receive approval for a larger, three-bedroom unit is unsupported by the record. Apart from the fact that Ritter conceded this in her papers opposing summary judgment, we conclude that this finding is not material to the disposition of this case, and we do not rely on it.

She also disputes the district court's findings that persons staying beyond two weeks in a dwelling unit could be examined for eligibility in their own right, and that Mazza was offered the opportunity to do this and refused. Again, we conclude that these facts are not material to whether Mazza's stay violated Ritter's "family obligation."

Finally, Ritter contends that the record does not support the conclusion that she committed fraud and violated a family obligation not to commit fraud. *See* 24 C.F.R. § 882.210(d)(1). While there were some indications in the record that the public housing agency felt that Ritter acted fraudulently in not disclosing Mazza's presence, the district court made no finding that Ritter committed any such fraud.

not given sufficient notice that violation of the two-week visitation rule would lead to a loss of benefits and that the lack of notice constituted a violation of the Due Process Clause of the Fourteenth Amendment.

### III

■ We review the district court's summary judgment ruling *de novo*. *Haavistola v. Community Fire Co.*, 6 F.3d 211, 214 (4th Cir.1993). The district court, in turn, should have granted summary judgment only if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, the court must draw permissible inferences from the underlying facts in the light most favorable to the party opposing the motion. *Haavistola*, 6 F.3d at 214.

■ The complaint in this case, which is brought under 42 U.S.C. § 1983, relies in the first count on rights established by HUD regulations [3] and in the second and third counts on rights granted by the Constitution. In connection with the first count based on rights granted by federal regulation, the Cecil County Housing Agency argues that, in ruling upon her claim, the district court was bound to show deference to it as an agency committed to administer the Section 8 program. It contends that the scope of judicial review is governed by the deferential standard in Administrative Procedure Act, 5

U.S.C. § 706(2), citing *Ellis v. Ritchie*, 803 F.Supp. 1097, 1100–01 (E.D.Va.1992). Ritter, on the other hand, argues that the district court owed no deference to the action of the agency.

■ The difficulty with Cecil County Housing Agency's position is that the Administrative Procedure Act provides standards of judicial review of agency actions, defining agency to mean "each authority of the Government *of the United States*," with certain exceptions. 5 U.S.C. § 701(b)(1) (emphasis added). Cecil County Housing Agency, the only entity that ruled on her claims, is a Maryland corporation, not a United States agency, serving as a local public housing agency in Cecil County, Maryland, for the administration of a federally funded housing program. While it may be authorized by the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, to act in the disposition of federal funds, it was neither created nor maintained or controlled by the United States. Accordingly, we conclude that the Administrative Procedure Act does not provide the standard of review for our consideration of the state agency's actions. *See Day v. Shalala*, 23 F.3d 1052, 1064 (6th Cir.1994).

■ But that conclusion does not end the analysis. Even though a state agency may not benefit from the standard of review established by the Administrative Procedure Act, it is appropriate for us to show some deference to a state agency interpreting reg-

**3.** To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation by agents of the state of a right granted either by the Constitution or by federal statute. *See Wright v. Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). A threshold question about Ritter's claim based on a violation of HUD regulations, not raised by the parties, is whether she has a right created *by statute* not to have Section 8 benefits terminated except for specified causes. Rights created by regulation alone, if rights can be so created, probably cannot form the basis for a § 1983 action. *See Wright*, 479 U.S. at 437–38, 107 S.Ct. at 777–78 (O'Connor, J., dissenting) (expressing concern that ill-defined statutory rights, which are more firmly established by regulation, not become "unleashed from any connection to *congressional* intent" (emphasis added)).

Ritter claims an entitlement not to be denied Section 8 assistance on the basis of 42 U.S.C. § 1437f, and specifically, regulations promulgated thereunder. *See* 24 C.F.R. §§ 882.210(d) and 882.118. To the extent that the statutes and regulations defer to public housing agencies to administer the program, rights that may be defined by administrative rules become yet more removed from congressional intent, arguably casting doubt on the right to bring such an action under 42 U.S.C. § 1983. Because of our rulings that Ritter has not been denied any right granted her by statute or regulation and that the public housing agency's two-week rule is consistent with and in furtherance of existing regulation, we need not decide this difficult § 1983 issue. Rather, we proceed on the assumption that she is entitled to sue for improper termination of Section 8 assistance when the termination is in conflict with federal regulation.

ulations under the authority of a federally created program. See General Electric Co. v. Gilbert, 429 U.S. 125, 141, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976) (granting "less weight" to EEOC guidelines for administration of civil rights laws than to official regulations); Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (granting some deference to interpretive guidelines of agency Administrator, recognizing that "while not controlling upon courts by reason of their authority, [they] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"). Although less deference may be due when considering an agency's interpretative rules than when a federal agency adopts regulations through the official rulemaking process, see 5 U.S.C. § 553, 556, Chevron USA v. Natural Resources Defense Council, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), or when a policy-making agency adjudicates disputes, see Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Trades Council, 485 U.S. 568, 574, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988), the nature of our inquiry here is quite similar. See, e.g., Kennedy v. Shalala, 995 F.2d 28, 30 n. 3 (4th Cir.1993) (interpretive rulings entitled to some deference even though not a part of statute or regulation).

In this case, Ritter contends (1) that the administrative interpretive rule adopted by the Cecil County Housing Agency is not authorized by statute or regulation, and (2) that a two-week rule in any event is arbitrary. The deference that we conclude is applicable applies only to the extent the agency's rules are not contrary to the statute or regulation, and that question is one of law for the courts to determine de novo. See

Public Employees Retirement System v. Betts, 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989) (no deference due agency interpretation at odds with the statute). Once it is determined, however, that a rule is not inconsistent with the statute or regulation, deference is accorded, and a court may not substitute its own interpretation for the agency's if the agency's interpretation is reasonable. See Chevron, 467 U.S. at 844, 104 S.Ct. at 2782.

IV

Ritter argues that a violation of the two-week visitation rule "is not a basis for which a [public housing agency] can lawfully terminate Section 8 assistance. The exclusive grounds for the termination of a Section 8 participant's assistance are contained in 24 C.F.R. §§ 882.210(d) and 882.118." [4] Ritter would agree that these regulations authorize termination of Section 8 assistance were she to have provided a permanent residence for Sonia Mazza and her daughter. Mazza was not approved as a member of Ritter's family, was not related to Ritter, and would have been receiving the benefits of a federal subsidy without having qualified for it. Ritter argues, however, that a rule that defines residency as any visitation exceeding two weeks is not authorized by statute and that the agency should have conducted a more general inquiry into whether Mazza was a "resident" without relying on the harsh two-week rule, essentially questioning the rule's reasonableness. If it had individualized its decisionmaking, she asserts, it would not have terminated her benefits because she never intended that Mazza become a permanent resident.

---

4. The applicable portions of these regulations provide:

§ 882.210 Grounds for denial or termination of assistance.

(d) In the following cases, the PHA may terminate housing assistance payments which are being made on behalf of the participant under an outstanding Contract:

\* \* \* \* \* \*

(2) If the participant has violated any Family obligation under the Section 8 Existing Housing Program as stated in § 882.118.

§ 882.118 Obligations of the Family.

(a) The family must:

\* \* \* \* \* \*

(5) Use the dwelling unit (or, in the case of Shared Housing, the portion thereof) solely for residence by the Family, and as the Family's principal place of residence; and shall not assign the Lease or transfer the unit.

Ritter's argument presents the frequently occurring problem of drawing lines in gray areas that do not readily lend themselves to definition by line-drawing. In the final analysis, no houseguest is permanent. If the houseguest remains a year, is the guest a resident within the definition of § 882.-118(a)(5)? If an exchange student remains in a house for an academic semester, is the student a resident? Is a person who moves into a house for an indefinite period, but then is called away after ten days, a resident? Or indeed, at the other extreme, is anyone who remains overnight a resident? Time may be important in resolving the question, but so are other factors, such as whether the guest gave up another place to stay in favor of the Section 8 dwelling unit, or whether the Section 8 unit was provided to the guest for compensation, or what personal belongings were moved into the unit. The regulation provides no guidance other than to say that a unit is to be used "solely for residence by the Family." Reading the language strictly, it could be argued that Mazza would not be authorized even to stay overnight since Mazza was not a member of the family. Even if the intent of the parties could be always ascertained, a line would nevertheless have to be drawn to resolve whether non-permanent residency of seven days, seven months, or even one year would fall afoul of the regulation. Unquestionably, the underlying purpose of § 882.118 is that federal assistance be limited to only those who qualify.

Congress intended to rely heavily on state and local public housing agencies for individual decisions in administering the program. This is a repeating theme throughout the statute and the regulations. *See, e.g.,* 42 U.S.C. § 1437 (vesting in local public housing agencies "the maximum amount of responsibility in the administration of their housing programs"); 24 C.F.R. § 882.116 (listing the responsibilities of PHA's in administering the program). As part of the mandate, the Cecil County Housing Agency is charged with applying the regulation that dwelling units for which it provides Section 8 assistance be used solely for residency of the approved family. While the local agency could attempt to make that determination on a case-by-case basis, inevitably such an approach would lead to disputes, charges of unfairness, and even litigation, because in almost any circumstance the agency could reasonably interpret the regulation in two different ways.

To avoid this unsatisfactory possibility, Cecil County Housing Agency adopted the rule, which administratively interprets the prohibition that a dwelling unit not be used for residence of anyone other than an approved family, establishing two weeks as the delineation between a proper visitation and an improper residency.[5] We conclude that the two-week visitation rule is not inconsistent with the HUD regulation prohibiting residency by non-family members, and that adoption of this rule was well within the authority given to the Cecil County Housing Agency for administrating the Section 8 program. Moreover, in view of the difficulty inherent in differentiating between a visitation and residency, we cannot say that the administering agency's interpretation is unreasonable. Under the deference to be accorded a reasonable interpretation, we cannot substitute a different view, even if we thought it more reasonable. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782.

Application of the two-week rule justifies the Cecil County Housing Agency's action. Since it is undisputed in this case that Ritter permitted Mazza to reside in Ritter's dwelling unit for more than two weeks (January 16 or January 22 to March 3, 1993), it follows that she violated the residency prohibition

---

**5.** The rule was not only made a part of the Administrative Plan, which was approved by HUD, but it was included as a term of each lease approved by the Cecil County Housing Agency. Ritter agreed to the rule when she signed the lease for 107–D Courtney Drive. The lease provides:

Tenant agrees not ... to give accommodation to boarders or lodgers without the written consent of the Landlord and the PHA.

Tenant further agrees not to use or permit the use of the dwelling unit for any purpose other than as a private dwelling unit solely for Tenant and his/her family and/or dependents.
This provision does not apply to reasonable accommodation of Tenant's guests or visitors whose stay is less than two weeks.

imposed by 24 C.F.R. § 882.118, a violation that justifies termination under 24 C.F.R. § 882.210(d). Accordingly, we reject Ritter's argument that her Section 8 assistance was terminated for any reason *other than* one authorized by 24 C.F.R. §§ 882.210(d) and 882.118.

## V

Ritter also contends that she did not know that a violation of the two-week visitation rule could result *in termination* of Section 8 assistance. She contends that because she was never so advised, she was deprived of a property interest without due process of law in violation of the Fourteenth Amendment. This argument is without merit.

The protections necessary to satisfy the Due Process Clause vary depending upon the time, place, and circumstances of the deprivation. *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). In this case, the notice to Ritter was more than adequate. Every participant in a Section 8 program is advised by federal regulation that the assistance may be terminated for failure to comply with family obligations, 24 C.F.R. § 882.210(d)(2), and family obligations include the obligation to use the dwelling unit solely for residency of the family, § 882.118(a)(5). In the lease that Ritter signed, this family obligation is restated almost verbatim, *together with the two-week visitation rule* interpreting the regulation for purposes of its application to the lease. As noted above, the lease provides that Ritter agrees "not to use ... the dwelling unit for any purpose other than as a private dwelling unit solely for [her and her dependents]. This provision does not apply to reasonable accommodation of [Ritter's] guests or visitors *whose stay is less than two weeks.*" (Emphasis added).

Ritter was also advised through the Administrative Plan of the terms of the two-week visitation rule. The Plan provides, "Because HUD regulations do not specify the length of reasonable stay by a house guest, the CCHA will interpret 'reasonable stay' as not to exceed two (2) weeks total in any one year cycle."

Finally, Ritter's own affidavit manifests recognition of the requirement. She stated that in early February 1993 she went to the Housing Agency "to find out if I could add Ms. Mazza ... to my Section 8 Certificate. Ms. Rowles told me that Sonia Mazza and I could not live together because we were not related." Ritter nevertheless permitted Mazza to remain in her unit for yet another month.

In short, Ritter clearly knew of the residency regulation and that the regulation, if violated, was a stated basis for termination of benefits. She was also advised in advance that the Cecil County Housing Agency interpreted the residency regulation with its two-week administrative rule. In light of these circumstances, her argument that she was not provided notice that violation of the two-week rule could result in termination of Section 8 assistance cannot succeed.

The judgment of the district court is accordingly affirmed.

*AFFIRMED.*