*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0342p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

OLIVER CASWELL,

               *Plaintiff-Appellant,*

     *v.*

CITY OF DETROIT HOUSING COMMISSION; TAYLOR
C. SEGUE III, Interim Executive Director,

               *Defendants-Appellees.*

No. 04-1540

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-71289—Lawrence P. Zatkoff, District Judge.

Argued: June 10, 2005

Decided and Filed: August 15, 2005

Before: KEITH, BATCHELDER, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Daniel P. Feinberg, LEGAL AID & DEFENDER ASSOCIATION, Detroit, Michigan, for Appellant. Angela R.C. Williams, DETROIT HOUSING COMMISSION, Detroit, Michigan, for Appellees. **ON BRIEF:** Daniel P. Feinberg, LEGAL AID & DEFENDER ASSOCIATION, Detroit, Michigan, for Appellant. Angela R.C. Williams, Julius A. Ray II, DETROIT HOUSING COMMISSION, Detroit, Michigan, for Appellees.

_____

**OPINION**

_____

     R. GUY COLE, JR., Circuit Judge. Oliver Caswell was a recipient of housing subsidies from the City of Detroit Housing Commission ("DHC"). When Caswell's landlord initiated eviction proceedings against him, DHC terminated Caswell's subsidies. Caswell filed an action under 42 U.S.C. § 1983 against the Housing Commission and its director, alleging an improper denial of subsidies. The district court denied Caswell's motion for summary judgment and *sua sponte* granted summary judgment to the defendants. For the following reasons, we **AFFIRM** the judgment of the district court.

1

## I.

Section 8 of the United States Housing Act of 1937 created the Tenant Based Assistance Housing Choice Voucher Program ("Voucher Program") in which the United States Department of Housing and Urban Development ("HUD") partially subsidizes the rent of qualifying low-income individuals. *See* 42 U.S.C. § 1437f(a). HUD authorizes local public housing authorities ("PHAs") to administer the Voucher Program. *Id.* at § 1437f(b)(1). Oliver Caswell participated in the Voucher Program, which was administered by DHC. Caswell was a beneficiary of the Voucher Program from November 1986 until November 2000.

On September 16, 2000, Caswell's landlord initiated eviction proceedings against him in state court for violating their lease agreement by failing to keep the premises clean. As is required by federal regulation, *see* 24 C.F.R. § 982.310(e)(2)(ii), the landlord sent a copy of the eviction notice to DHC. Caswell continued to reside in the apartment. On September 25, 2000, DHC sent Caswell a "Termination of Assistance Notice," specifying that all rental payments made by DHC on Caswell's behalf would be terminated by November 1, 2000. The notice gave Caswell ten days in which to request a hearing to appeal this decision. Caswell timely appealed, and DHC held a hearing on November 1. Caswell represented himself at this hearing and failed to dispute the landlord's claims that he violated the lease agreement. The next day, DHC terminated Caswell's benefits.

The eviction action was tried in state court and, on November 27, Caswell was granted the right to possess the apartment. The order granting Caswell continued possession became finalized in January of 2001. Caswell claims that during the month of November, however, he continued to live in the apartment without the assistance of the Voucher Program. At some point, Caswell was unable to pay the full rent and was evicted. As a result, Caswell claims that he became homeless for a short period of time. It appears that DHC has not reinstated Caswell's subsidy.

Caswell filed a § 1983 claim against DHC and its director, alleging that DHC: (1) improperly deprived Caswell benefits under the Voucher Program while the eviction proceeding was pending in state court; and (2) denied Caswell adequate due process at the hearing. Caswell filed a motion for summary judgment on these claims. The district court denied Caswell's motion and *sua sponte* granted summary judgment in favor of the defendants. The court dismissed, with prejudice, Caswell's claims. This timely appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *Thomas v. City of Chattanooga*, 398 F.3d 426, 428 (2005). Summary judgment is proper where the movant shows through "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The nonmovant must rebut such a showing by presenting sufficient evidence on which the jury could reasonably find for him; a mere scintilla of evidence is insufficient to meet this burden." *Thomas*, 398 F.3d at 429 (internal quotation marks omitted).

When the district court not only denies summary judgment to the movant but *sua sponte* grants summary judgment to the nonmovant, we must conduct two levels of review. "The substance of the district court's decision must of course meet the normal standards for summary judgement [sic]. However, the procedural decision to enter summary judgment *sua sponte* must also be reviewed to determine if the court abused its discretion by entering the judgment on its own motion." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995).

## A. Section 1983 liability for violations of 24 C.F.R. § 982.311(b)

Caswell argues that DHC violated 24 C.F.R. § 982.311(b) by terminating Caswell's housing subsidies *before* his eviction proceeding was finalized in state court and while he continued residing in the apartment. Under that regulation, the PHA "must continue to make housing assistance payments to the owner in accordance with the [ ] contract until the owner has obtained a court judgment or other process allowing the owner to evict the tenant. The PHA may continue such payments until the family moves from or is evicted from the unit." 24 C.F.R. § 982.311(b). Here, DHC conceded that, had it known that Caswell intended to reside in his apartment until the state court ordered him evicted, it would have been obligated to restore his rental subsidy or at least given him a "moving" package. The DHC argues, however, that it was unaware that Caswell was residing in the apartment, and that Caswell had an obligation to inform DHC of this fact if he wanted to continue to receive any subsidies after the landlord had initiated eviction proceedings. Consequently, both parties have framed this appeal as a dispute over whether the tenant bears the burden of notifying the PHA that he intends on residing in the apartment during eviction proceedings in order to continue receiving housing subsidies. Before we can consider what obligations DHC and Caswell may have each had under the regulations, we must first determine whether a § 1983 claim can lie against DHC for a violation of a federal regulation.

Section 1983 creates a federal cause of action against state and local officials who, while acting under the color of state law, deprive an individual of a right secured to him by the Constitution or federal law. 42 U.S.C. § 1983. Both the district court and Caswell relied upon this Court's decision in *Loschiavo v. City of Dearborn*, 33 F.3d 548 (6th Cir. 1994), for the proposition that § 1983 creates a federal cause of action for the violation of a federal regulation, unless the statute enabling said regulation forecloses enforcement. *Id*. at 551. However, the Supreme Court's decisions in *Alexander v. Sandoval*, 532 U.S. 275 (2001), and *Gonzaga University v. Doe*, 536 U.S. 273 (2002), have cabined *Loschiavo*'s holding.[1] In *Sandoval*, the Supreme Court held that there was no private cause of action to enforce Title VI regulations. 532 U.S. at 293. The Court stated that "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. . . . Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Id*. at 291 (internal citation omitted). It is important to note, however, that the plaintiffs in *Sandoval* had not pursued a cause of action under § 1983; rather, the plaintiffs argued that an implied cause of action existed directly under Title VI and its accompanying regulations. *See id*. at 299-300 (Stevens, J., dissenting) ("[T]o the extent that the majority denies relief to the respondents merely because they neglected to mention 42 U.S.C. § 1983 in framing their Title VI claim, this case is something of a sport."). Nevertheless, the Court in *Gonzaga* shed further light on this issue by applying *Sandoval*'s logic to § 1983 cases:

> [W]e further reject the notion that our implied right of action cases are separate and distinct from our § 1983 cases. To the contrary, our implied right of action cases should guide the determination of whether a statute confers rights enforceable under § 1983. We have recognized that whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute. But the inquiries overlap in one meaningful respect—in either case we must first determine whether Congress *intended to create a federal right*. Thus we have held that the question whether Congress . . . intended to create a private right of action is definitively answered in the negative where a statute by its terms grants no private rights to any

---

[1]Although a panel of this Court cannot overrule the decision of another panel, we may modify our prior holdings when an intervening opinion of the United States Supreme Court requires us to do so. *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

identifiable class. For a statute to create such private rights, its text must be phrased in terms of the persons benefited.

536 U.S. at 283-284 (emphasis in original) (internal quotation marks and citations omitted). The Court did distinguish cases brought under § 1983 from cases brought directly under the right-conferring statute by stating:

Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983.

*Id.* at 284 (internal citation omitted).

Accordingly, when *Sandoval* and *Gonzaga* are read together, it becomes clear that in order for Caswell to bring a viable claim under § 1983, he must show that the right, of which he seeks vindication, is conferred by Congress in "clear and unambiguous terms." *Gonzaga*, 536 U.S. at 290; *id.* at 286 ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."). Furthermore, the right conferred must be "phrased in terms of the persons benefited." *Id.* at 284 (internal quotation marks omitted). "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289 (internal quotation marks omitted). The Court made clear in *Gonzaga* that where a statute simply prohibits certain conduct, or sets forth a policy, that statute does not create a cause of action or other rights for the individual protected by the statute. *See* 536 U.S. at 287-288.

Here, Caswell claims that DHC violated 24 C.F.R. § 982.311(b) when it improperly terminated him from the Voucher Program. In supplemental briefing to this Court, Caswell argued that his right to be free from termination in this manner stems from 42 U.S.C. § 1437f(o)(2). Section 1437f(o) of the Housing Act establishes the Voucher Program. Subsection 2 of § 1437f(o) is entitled "Amount of monthly assistance payment," and begins: "Subject to the requirement under section 1437a(a)(3) of this title (relating to minimum rental amount), the monthly assistance payment for a family receiving assistance under this subsection shall be determined as follows . . . ." The provision then sets forth the varying amounts of tenant-based assistance that participants of the Voucher Program should receive. Caswell contends that this provision confers a right to tenants because it is analogous to the rent-ceiling provision of the Housing Act, 42 U.S.C. § 1437a, which the Supreme Court previously recognized as conferring upon tenants the right not to be overbilled. *See Wright v. City of Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 423-430 (1987). In *Wright*, the PHA overbilled tenants for their utilities, thereby directly violating the statutory rent ceiling provision of the Housing Act. Accordingly, the Court found that the tenants could sue the PHA via § 1983 for this federal rights violation. *Id.*

Even if § 1437f(o)(2) could be viewed as being phrased in terms of the persons "benefited," that is beside the point in our case. Section 1437f(o)(2) establishes the *amount* of monthly assistance that a tenant should receive *if* he is a participant of the program. Here, Caswell claims that DHC improperly terminated his participation in the Voucher Program altogether, not that DHC violated the monthly assistance amounts set forth in the statute. Therefore, even if § 1437f(o)(2) conferred a right to a fixed amount of subsidies, the right Caswell claims to have been violated—under 24 C.F.R. § 982.311(b)—has nothing to do with the amount of his subsidy. Moreover, we can find no provision under 42 U.S.C. § 1437 et. seq. which, in clear and unambiguous terms, confers a particular right upon the tenant to subsidies after the landlord initiates eviction proceedings. For example, 42 U.S.C. § 1437f(o)(7) establishes certain obligations of the

landlords of participants. However, nothing in this provision confers a right upon the tenant to continued housing subsidies during a court eviction proceeding. Another provision, 42 U.S.C. § 1437n, discusses the eligibility requirements for assisted housing. However, this section suffers the same fate as the aforementioned provision.

Because neither we nor Caswell can point to a specific statutory provision in the Housing Act that confers a right relevant to DHC's alleged violation of 24 C.F.R. § 982.311(b), Caswell cannot pursue his claim under § 1983. For this reason, we AFFIRM the district court's grant of summary judgment to DHC on Caswell's regulatory violation claim.

## B.  Due Process Violation

Caswell also argues that DHC violated his right to procedural due process. Caswell's argument is two-fold: first, he argues that the hearing was unfair because DHC sent him a notice of termination before having the hearing. Second, he argues that the hearing was inappropriate because his subsidies could not have legally been terminated while he remained in the apartment.

As to his first argument, Caswell correctly notes that 24 C.F.R. § 982.555(a)(2) requires that "the PHA must give the opportunity for an informal hearing before the PHA terminates housing assistance payments . . . ." However, here, DHC did not actually terminate Caswell's benefits until the day after the hearing. Therefore, the timing of the hearing with respect to the actual termination of benefits was proper.

Caswell's second claim is not a procedural due process argument. Caswell is not claiming that he was denied adequate process. To be sure, he is unable to point to what additional procedural safeguards should have been provided to better protect his property interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (setting forth a three-part test for determining whether particular procedures comport with due process). Caswell was permitted to conduct discovery, present evidence, cross-examine witnesses, and be represented by counsel, at his own expense. 24 C.F.R. § 982.555(e). Instead of pointing to a procedural flaw in his hearing, Caswell claims that he was improperly denied his property interest, despite the fact that he received process. This claim is inconsistent with a procedural due process claim. The "Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error." *Higgs v. Bland*, 888 F.2d 443, 449 (6th Cir. 1989) (quoting *Mackey v. Montrym*, 443 U.S. 1, 13 (1979)). Accordingly, we AFFIRM the district court's grant of summary judgment on this claim.

## III.

For the foregoing reasons, we hereby **AFFIRM** the judgment of the district court.