Christine GAMMONS, et al., Plaintiffs,

v.

MASSACHUSETTS DEPARTMENT OF HOUSING AND COMMUNITY DE-VELOPMENT, et al., Defendants.

Civil Action No. 07–10110–PBS.

United States District Court, D. Massachusetts.

Nov. 28, 2007.

Clarissa Hutchins Bronson, Goutam U. Jois, Harvard Legal Aid Bureau, Cambridge, MA, for Plaintiffs.

James J. Duane, III, Taylor, Duane, Barton & Gilman, LLP, Anthony J. Cichello, Hugh Dun Rappaport, Richard M. Bluestein, Krokidas & Bluestein, Kenneth W. Salinger, Massachusetts Attorney General's Office, Boston, MA, Andrew R. Weiner, Taylor Duane Barton & Gilman, LLP, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

PATTI B. SARIS, District Judge.

### INTRODUCTION

Plaintiff Christine Gammons, on behalf of herself and her minor children, challenges the termination of her family's Section 8 Housing Choice Voucher subsidy. On January 22, 2007, the plaintiffs filed the instant action pursuant to 42 U.S.C. § 1983 alleging that (1) the decision to terminate their Section 8 subsidy was not supported by the preponderance of the evidence, as required by Department of Housing and Urban Development ("HUD") regulations, (2) the decision failed to take into account mitigating evidence in violation of HUD regulations, and (3) the procedures employed by the government during the termination hearings violated their due process and privacy rights. The defendants in this action are the Massachusetts Department of Housing and Community Development ("DHCD"); Tina Brooks, the current Director of DHCD; the Metropolitan Boston Housing Partnership ("MBHP"); Julia Kehoe, the Executive Director of MBHP; Birgitta Damon, Director of Leased Housing for MBHP; Melinda Koenig, the Manager of Family Self–Sufficiency for MBHP; Jim Bianchi, an employee of MBHP; and Jane Doe No. 1, an unnamed employee of MBHP. In their verified complaint plaintiffs seek declaratory and injunctive relief as well as compensatory and punitive dam-

ages.[1]

Defendants move to dismiss the verified complaint (Docket Nos. 30 & 32), and plaintiffs oppose. After hearing, the Court *ALLOWS-IN-PART* and *DENIES-IN-PART* the defendants' motions to dismiss.

### FACTS

The verified complaint alleges the following facts, many of which are disputed.

In 1999 Gammons received a Section 8 subsidy under the federal Housing Choice Voucher Program, which is administered by the defendant MBHP for the defendant DHCD. Both MBHP and DHCD are considered public housing agencies as defined by the HUD regulations. 24 C.F.R. § 982.1(a)(1). At the time, Gammons lived in Haverhill with her three children and then-boyfriend, Andrew Williams.

Gammons and Williams subsequently married on February 3, 2001. The relationship was stormy. Gammons contends that Williams subjected her to physical and emotional abuse. Williams was initially listed as part of Gammons' household but, because of the abuse, his name was later removed. Over the years, Williams lived with Gammons on an intermittent basis.

On or about June 1, 2005, Gammons moved into an apartment located on 90 Endicott Avenue # 2 in Revere, Massachusetts. The lease did not include Williams's name. Gammons later applied to have Williams added to the lease, but decided against completing the process when the relationship again soured. In June 2006, program administrators from MBHP conducted a routine inspection of the apart-

ment and found mail addressed to Williams. The landlord, Susan Coppola, also told MBHP that Williams was residing in the unit.

On June 27, 2006 MBHP held a case conference with Gammons to discuss the composition of her household. As a result of that conference, MBHP decided to terminate her Section 8 voucher on the grounds that Williams was living with Gammons, and Gammons failed to list Williams as a member of the household. Gammons appealed this initial determination. Consequently, on August 10, 2006 MBHP held an "informal hearing." Gammons was represented at the MBHP informal hearing by the Tenant Advocacy Project at Harvard Law School. The government presented two witnesses who were subject to cross-examination. Gammons testified.

After considering all the evidence, on September 1, 2006, the MBHP hearing officer, defendant Melinda Koenig, found "based upon the overwhelming preponderance of evidence . . . that Mr. Williams was an unreported household member and used 90 Endicott Street in Revere as his primary residence." (Compl. Ex. 1 at 8). The officer found that Gammons had provided false statements to MBHP by omitting Williams and his income from her subsidy applications for several years. She concluded:

> I am led to believe you provided false statement, omission, or concealment of substantive fact, made with intent to deceive or mislead; and that you did not list Andrew Williams on your household, knowing he was a permanent resident of your household, as you knew and under-

---

1. The verified complaint asserts a violation of civil rights under 42 U.S.C. § 1983 (Count I); a violation of constitutional rights (Count II); and a violation of Mass. Gen. Laws ch. 30A (Count III). On March 22, 2007, the parties filed a Stipulation of Dismissal as to Count III in its entirety and all claims for compensatory and punitive damages against DHCD and defendant Tina Brooks. (Docket No. 29).

stood that doing so would increase your family contribution to the rent. (*Id.* at 9). The hearing officer upheld the termination of the plaintiffs from the Section 8 program and determined that Gammons was overpaid $6,713 in subsidies because Williams' income had not been reflected in prior subsidy calculations.

On September 13, 2006, Gammons asked DHCD to review the MBHP decision. On March 5, 2007, the DHCD upheld Gammons' termination from the Section 8 voucher program.[2] The plaintiff challenged this decision by filing suit in state and federal court. On May 9, 2007, this Court denied the plaintiffs' motion for a preliminary injunction.

## *DISCUSSION*

### 1. *Standard for Motion to Dismiss*

For purposes of the defendants' motion to dismiss under Rule 12(b)(6), the Court takes as true the "well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *Coyne v. City of Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992) (citing *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990)). A complaint should not be dismissed under Fed. R.Civ.P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The MBHP decision attached to the complaint may be considered a part of the pleading by the Court without converting the motion to dismiss into a motion for summary judgment. *See Blackstone Realty LLC v. FDIC,* 244 F.3d 193, 195 n. 1 (1st Cir. 2001). The Court may also take into account the DHCD decision. *See Town of Norwood v. New England Power Co.,* 202 F.3d 408, 412 n. 1 (1st Cir.2000). However, the Court will not take into account all of the papers considered during the preliminary injunction hearing in ruling on a motion to dismiss because the parties dispute what documents should properly be in the agency record.

### 2. *Statutory and Regulatory Framework*

Congress established the Section 8 housing assistance program in order to help low income families obtain a "decent place to live." 42 U.S.C. § 1437f(a). Under Section 8, the Secretary of HUD enters into contracts with state and local public housing agencies ("PHA's") and funds them. *See* 42 U.S.C. § 1437f(b)(1), (o)(1)(A). PHA's are authorized to receive applications from eligible persons seeking housing assistance, approve or deny applications, provide vouchers to approved applicants, and terminate vouchers. *See* 42 U.S.C. §§ 1437c–1(d), 1437f (o).

HUD requires PHA's to adopt a Section 8 Administrative Plan delineating policies on matters for which the PHA has discretion to establish local policies. 24 C.F.R. § 982.54(a). With respect to residency, the HUD regulations provide that, with few exceptions, "nobody but members of the assisted family ... may reside in [a participant family's] unit." *See* 24 C.F.R.

---

**2.** On September 1, 2006, Gammons unilaterally moved from her apartment because of unsafe conditions, which resulted in the cessation of her right to Section 8 benefits. As Julia E. Kehoe, the Executive Director of MBHP, stated in an affidavit, a tenant remains a participant in the Section 8 program during the appeal process unless she moves without authorization. Thus, the last payment to Gammons was on September 1, 2006. (Docket No. 24, ¶¶ 45–47).

§ 982.551(h)(2). The relevant HUD regulations do not define "resident" or "reside." "Family" is defined as "[a] person or group of persons, as determined by the PHA, approved to reside in a unit with assistance under the program." 24 C.F.R. § 982.4(b). DHCD has adopted a Section 8 Administrative Plan that defines family as:

> All the members of a household under one roof and consisting of approved household members as listed on the HAP contract [3] or as subsequently approved by both the owner and the RAA [Regional Administering Agency [4]] in writing. DHCD recognizes that a variety of relationships exist, which are not necessarily relationships of ancestry or marriage. Each RAA is encouraged to exercise the best possible judgment in this regard. A family may consist of a single individual.

(Docket No. 44 at 2 (citing Plan)). Despite the DHCD's definition of "family," the DHCD has not specifically defined "resident" or "reside" in its administrative plan. (*Id.* at 3). In December 2005, however, the MBHP began requiring a head of household to list on its Family Certification Form "all persons living in [the] unit 50% or more of the time." (Docket No. 45 at 1). The previous version of the form "simply instructed the head of household to list all members of his/her family." *Id.* The MBHP adopted the new language "in an effort to provide further clarification" regarding those persons required to be listed as family members. *Id.*

The HUD regulations specify when a PHA may terminate a participant family's Section 8 voucher assistance. 24 C.F.R. § 982.552. A PHA may terminate voucher assistance if a participant family "violates any family obligations." 24 C.F.R. § 982.552(c)(1)(i). Family obligations include providing "true and complete" information to a PHA. 24 C.F.R. § 982.551(b)(4). A participant family is also obligated (1) to seek PHA approval for the "composition of the assisted family residing in the unit" and (2) to "request PHA approval to add any other family member as an occupant of the unit." 24 C.F.R. § 982.551(h)(2).

Additionally, the HUD regulations permit a PHA to terminate a participant family's voucher assistance "[i]f any member of the family has committed fraud ... in connection with any Federal housing program." 24 C.F.R. § 982.552(c)(1)(iv). HUD regulations define fraud as "a single act or pattern of actions: (1) That constitutes false statement, omission, or concealment of a substantive fact, made with intent to deceive or mislead; and (2) That results in payment of Section 8 program funds in violation of section 8 program requirements." 24 C.F.R. § 792.103.

Tenants who are confronted with adverse action by a PHA are statutorily entitled to specific grievance procedures. 42 U.S.C. § 1437d(k) specifies that:

> The Secretary shall by regulation require each public housing agency receiving assistance ... to establish and implement an administrative grievance procedure under which tenants will:
>
> (1) be advised of the specific grounds of any proposed adverse public housing agency action;

---

**3.** A HAP contract is a housing assistance payment contract. 24 C.F.R. § 982.4. A housing assistance payment includes the monthly payment made by a PHA to an owner in accordance with a family's lease. 24 C.F.R. § 982.4.

**4.** Under the DHCD Administrative Plan, a RAA is an "agency under contract with DHCD to administer federal rental assistance programs on its behalf." The MBHP is a RAA.

(2) have an opportunity for a hearing before an impartial party upon timely request ...;

(3) have an opportunity to examine any documents or records or regulations related to the proposed action;

(4) be entitled to be represented by another person of their choice at any hearing;

(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and

(6) be entitled to receive a written decision by the public housing agency on the proposed action.

The HUD regulations further describe the processes that a PHA must follow before terminating a participant family's Section 8 subsidy. *See* 24 C.F.R. § 982.555. A PHA must provide a participant family with a pre-termination hearing if the PHA's proposed termination of a tenant's Section 8 assistance is "because of the family's action or failure to act." 24 C.F.R. § 982.555(a)(1)(v), (a)(2). In such cases, a PHA "must give the family prompt written notice" that includes "a brief statement of the reasons for the [proposed termination]" and "[s]tate that ... the family may request an informal hearing on the decision." 24 C.F.R. § 982.555(c)(2)(i)-(ii). Before an informal hearing, a family "must be given the opportunity to examine ... any PHA documents that are directly relevant to the hearing." 24 C.F.R. § 982.555(e)(2)(i). A family has a right to representation at a hearing and "must be given the opportunity to present evidence" at the hearing. 24 C.F.R. § 982.555(e)(3), (5). A family also "may question any witnesses." 24 C.F.R. § 982.555(e)(5). The hearing officer must "issue a written decision, stating briefly the reasons for the decision." 24 C.F.R. § 982.555(e)(6).

"Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." *Id.*

A PHA is not required to terminate assistance in every circumstance where a basis for termination exists. *See* 24 C.F.R. § 982.552(c)(1). When determining whether to terminate a family's voucher assistance, a PHA

may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family or members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

24 C.F.R. § 982.552(c)(2)(i).

### 3. Section 1983

Plaintiffs contend, among other things, that the MBHP and DCHD failed to comply with the housing regulations governing Section 8 housing in violation of 42 U.S.C. § 1983. In this case, the plaintiffs allege that the defendants (1) violated 24 C.F.R. § 982.555(e)(6) by failing to show by a "preponderance of the evidence" that Williams resided with Gammons and that Gammons had "actual intent to defraud" the housing agency (Compl.¶ 78(a)-(b)) and (2) violated 24 C.F.R. § 982.552(c)(2)(i) by failing to properly consider mitigating circumstances when upholding the housing authority's determination to terminate Gammons's subsidy. (Compl.¶ 78(c)).[5]

The threshold question is whether the plaintiffs have an enforceable right under § 1983 not to have their Section 8 benefits improperly terminated in contravention of HUD regulations. Defendants insist that if plaintiffs wish to challenge the termi-

---

**5.** Plaintiffs' verified complaint misstates the regulation as 24 C.F.R. § 958.522(c)(2)(i).

nation decision by MBHP and DCHD, they must seek judicial review under state law. This turns out to be a complex and difficult question of federal law.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that "a person acting under color of state law ... deprived the plaintiff of rights secured by the Constitution or laws of the United States." *Johnson v. Mahoney*, 424 F.3d 83, 89 (1st Cir.2005). The starting point in the analysis is *Wright v. City of Roanoke Redevelopment and Housing Authority*, where the Supreme Court considered a § 1983 suit brought by tenants alleging that the city over-billed them for their utilities in violation of a rent ceiling imposed by federal statute and HUD's implementing regulations. 479 U.S. 418, 421, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). The rent-ceiling language of the statute placed a mandatory limit on "rent" and was considered by the Court to evince a clear congressional "intent to benefit tenants." *Id.* at 429–30, 107 S.Ct. 766. The HUD regulations further defined "rent" to include a "reasonable" utility allowance. *Id.* at 420 n. 3, 430, 107 S.Ct. 766.

The statute at issue in *Wright* did not explicitly refer to the inclusion of a reasonable utility allowance within the meaning of "rent." *Wright*, 479 U.S. at 434, 107 S.Ct. 766 (O'Connor, J., dissenting) ("On the face of the statute, there is nothing to suggest that Congress intended that utilities be included within the statutory entitlement."). Nonetheless, the Supreme Court viewed the HUD regulations defining "rent" to include a reasonable utility allowance as a further interpretation of the right provided by the rent-ceiling statute. Thus, the HUD regulations were "entitled to deference as a valid interpretation of the statute." *Id.* at 430, 107 S.Ct. 766.

Following *Wright*, the Fourth Circuit has recognized a cause of action under § 1983 when a tenant has alleged that a hearing officer's decision was not supported by sufficient evidence. In *Clark v. Alexander*, the plaintiff Stacey Clark had her Section 8 benefits terminated because the PHA in that case found that a family member in her household, David Clark, engaged in illegal drug activity, in violation of HUD regulations. 85 F.3d 146, 149–50 (4th Cir.1996). As here, Clark's § 1983 claim challenged the sufficiency of the PHA's fact-finding. Clark contended that the PHA improperly found that David Clark was a "family member" under HUD regulations. *Id.* at 150–52. The Fourth Circuit addressed what standard of review applies "in federal civil rights cases challenging the decisions of local housing authorities implementing the federal low-income housing assistance program," ultimately holding that a "substantial evidence" standard applies to afford the PHA "significant" deference. *Id.* at 148, 151–52. In doing so, the Fourth Circuit cited *Wright* for the proposition that "violations of federal housing laws by state agencies implementing those laws are actionable under Section 1983." *Id.* at 150.[6]

In contrast, the Sixth Circuit recently reversed its earlier precedent and held

---

6. The *Clark* court also quotes *Ritter v. Cecil County Office of Housing and Community Development*, which states the following: "we proceed on the assumption that [plaintiff] is entitled to sue for improper termination of Section 8 assistance when the termination is in conflict with federal regulation." *Clark*, 85 F.3d at 150 (citing *Ritter*, 33 F.3d 323, 327 n. 3 (4th Cir.1994)). The Court in *Ritter*, however, expressly reserved the question of whether a § 1983 claim could be "based on a violation of HUD regulations," stating that "we need not decide this difficult § 1983 issue." *Ritter*, 33 F.3d at 327 n. 3. It is unclear whether the court in *Clark* also reserved the issue.

that a plaintiff could not bring a § 1983 claim based upon an alleged violation of a right arising from a HUD regulation when there was no statutory provision that clearly conferred such a right. *Caswell v. City of Detroit Hous. Comm'n,* 418 F.3d 615, 620 (6th Cir.2005). In *Caswell* the plaintiff alleged that the PHA in that case violated HUD regulations when it terminated the plaintiff's Section 8 subsidies because the landlord initiated eviction proceedings due to uncleanliness. *Id.* at 617. The applicable HUD regulation prohibited termination of a housing subsidy before an eviction proceeding was finalized in state court. *Id.* at 618 (citing 24 C.F.R. § 982.311(b)). Relying on *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) and *Gonzaga University v. Doe,* 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the Sixth Circuit overruled its earlier decision in *Loschiavo v. City of Dearborn,* 33 F.3d 548 (6th Cir. 1994), reasoning that *Sandoval* and *Gonzaga,* when read together, hold that in order to bring a viable claim under § 1983, a Section 8 recipient "must show that the right, of which he seeks vindication, is conferred by Congress in 'clear and unambiguous terms.'" *Id.* at 618–19 (citations omitted). The tenant argued that the right to be free from termination "in this manner" (i.e. prior to eviction) stemmed from 42 U.S.C. § 1437f(*o*)(2) which establishes the voucher program. Rejecting this argument, the Sixth Circuit held:

> Even if § 1437f(*o*)(2) could be viewed as being phrased in terms of the persons "benefitted," that is beside the point in our case. Section 1437f(*o*)(2) establishes the *amount* of monthly assistance that a tenant should receive *if* he is a participant of the program. Here, Caswell claims that DHC improperly terminated his participation in the Voucher Program altogether, not that DHC violated the monthly assistance amounts set

forth in the statute. Therefore, even if § 1437f(*o*)(2) conferred a right to a fixed amount of subsidies, the right Caswell claims to have been violated—under 24 C.F.R. § 982.311(b)—has nothing to do with the amount of his subsidy. Moreover, we can find no provision under 42 U.S.C. § 1437 et seq. which, in clear and unambiguous terms, confers a particular right upon the tenant to subsidies after the landlord initiates eviction proceedings. For example, 42 U.S.C. § 1437f(*o*)(7) establish certain obligations of the landlords of participants. However, nothing in this provision confers a right upon the tenant to continued housing subsidies during a court eviction proceeding. Another provision, 42 U.S.C. § 1437n, discusses the eligibility requirements for assisted housing. However, this section suffers the same fate as the aforementioned provision.

*Id.* at 620.

Like *Caswell,* two other federal courts have narrowly construed the circumstances under which a tenant may challenge her termination under § 1983. *See Fields v. Omaha Hous. Auth.,* No. 8:04CV554, 2006 WL 176629, at *3 (D.Neb. Jan.23, 2006) (concluding that a tenant may challenge the termination of her Section 8 benefits under § 1983 because of allegedly improper procedures but could not litigate whether the rent recalculation itself was improper); *Thomas v. Butzen,* No. 04 C 5555, 2005 WL 2387676, at *11 (N.D.Ill. Sept.26, 2005) (holding that § 1437f(*o*) "does not create a private right of action or contain any indication that Congress intended it to confer enforceable rights on plaintiffs").

The statute at issue in this case, 42 U.S.C. § 1437d(k), mandates that HUD provide by regulation that PHA's provide tenants with certain procedural rights

should a PHA decide to terminate a subsidy. The regulations provide that a hearing officer's determination must be supported by a preponderance of the evidence, see 24 C.F.R. § 982.555(e)(6), and that the hearing officer may consider certain mitigating evidence. *See* 24 C.F.R. § 982.552(c)(2)(i). The statute does not expressly provide a right to judicial review, although the Section 8 termination decisions of DHCD and MBHP are subject to review under Mass. Gen. Laws ch. 30A. *See Galeas v. Chelsea Hous. Auth.*, No. 035340F, 2004 WL 1895053, at *3 (Mass.Super.Ct. Aug. 8, 2004) (noting that a Section 8 termination decision by a housing authority was subject to review under Chapter 30A).[7]

As such, defendants argue that § 1983 only provides a cause of action where the agencies failed to provide procedures consistent with the statute, regulations and due process clause, and contend that there is no cause of action under federal law where the challenge is to the sufficiency of the evidence supporting the decision to terminate a Section 8 subsidy. Plaintiffs contend otherwise. Supreme Court case law does not plainly answer this dispute. While the Supreme Court has clarified that a federal right must be "unambiguously conferred" by Congress to support a § 1983 action, *Gonzaga*, 536 U.S. at 283, 122 S.Ct. 2268, it nonetheless expressly reconfirmed the holding in *Wright* that the HUD statute at issue in that case, when interpreted by the implementing regulations, created an enforceable right. *See Id.* at 280, 122 S.Ct. 2268.

As mentioned earlier, 42 U.S.C. § 1437d(k) mandates the creation of proce-

dural rights for tenants faced with adverse action. The language of the statute unambiguously confers rights for the benefit of Section 8 subsidy recipients. One of these rights includes being "entitled to receive a *written decision* by the public housing agency on the proposed action." 42 U.S.C. § 1437d(k)(6) (emphasis added). The HUD regulations clarify what constitutes a proper written decision by specifying that a hearing officer must "stat[e] briefly the reasons for the decision," and that "[f]actual determinations ... *shall* be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6) (emphasis added). Accordingly, I conclude that a tenant who claims her Section 8 benefits have been arbitrarily terminated because a hearing officer's decision is not based on a preponderance of the evidence pressed at the hearing sufficiently states a claim under § 1983.

■ Plaintiffs' § 1983 claim alleging a "[f]ail[ure] to adequately consider the circumstances and effects of the termination on Gammons's children, who were not involved in the alleged fraud," (Compl.¶ 78(c)), is on less sure footing. The HUD regulations provide that "[t]he PHA *may* consider all relevant circumstances," including "the effects of denial or termination of assistance on other family members who were not involved in the action or failure," in deciding whether to terminate Section 8 assistance. 24 C.F.R. § 982.552(c)(2)(i) (emphasis added). The regulation does not mandate that the PHA consider "all relevant circumstances," and thus is not sufficiently rights-creating to

---

**7.** The existence of state court remedies alone does not preclude plaintiffs' § 1983 claim. *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."). More-

over, the *Parratt–Hudson* doctrine does not apply to this case, since the termination of plaintiffs' Section 8 subsidy does not constitute a "random and unauthorized" deprivation. *See Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 536 & n. 9 (1st Cir.1995).

support a § 1983 claim. *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 73 (1st Cir.2005) (requiring "rights-creating language" to assert a § 1983 claim, citing *Gonzaga*, 536 U.S. at 287–90, 122 S.Ct. 2268); *see also Blessing v. Freestone*, 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) ("the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms."). Thus, plaintiffs' § 1983 claim with respect to the defendants' failure to consider the circumstances of Gammons' children must fail.

In recognizing a cause of action under § 1983 to challenge the sufficiency of the evidence supporting the defendants' decision to terminate the plaintiffs' Section 8 subsidy, the Court does not grant the plaintiffs' a brand new hearing or evaluate the facts de *novo*. "[D]eference must be shown to the factfinding of local housing authorities." *Clark*, 85 F.3d at 151; *see also Ang v. Gonzales*, 430 F.3d 50, 54 (1st Cir.2005) (stating in immigration law context, "we assay the [administrative fact finder's] findings of fact, including credibility determinations, under a highly deferential 'substantial evidence' standard."). Consistent with both state and federal law, the Court will review the sufficiency of the defendant PHA's findings of fact under a deferential standard to determine whether they are based on a preponderance of the evidence in the record. Cf. Mass. Gen. Laws ch. 30A, § 14(7)(e) (applying substantial evidence standard to review of state agency decisions); 5. U.S.C. § 706(2)(E) (applying substantial evidence standard to review of federal agency decisions).[8]

Gammons specifically claims that the MBHP and DCHD failed to show by a preponderance of the evidence that Williams resided with Gammons under the fifty percent residency policy and that she had "actual intent to defraud." (Compl.¶¶ 78(a)-(b)). The Court cannot determine whether the hearing officer's determination was based on substantial evidence without a full record of the hearing. Therefore, this matter must be disposed of through cross-motions for summary judgment.[9]

## 5. Constitutional Rights

Plaintiffs have alleged that the defendants violated several of their due process and privacy constitutional rights in terminating the Section 8 voucher subsidy by using inappropriate procedures. (Compl.¶¶ 78(d)-(h); Compl. Count II). For example, plaintiffs claim that MBHP inappropriately permitted hearsay in the hearing, engaged in an ex parte communication with DHCD, relied on constitutionally impermissible reasons for the decision, failed to make subsidiary findings on the intent to deceive, and infringed plaintiffs' privacy interests. The Court rejected these arguments in the opinion on the motion for preliminary injunction. *See Gammons v. Mass. Dep't of Hous. & Cmty. Dev.*, 502 F.Supp.2d 161 (D.Mass. 2007). The Court dismisses those claims for the reasons stated in the opinion.

---

**8.** For the above reasons defendants claim that the doctrine of collateral estoppel precludes the instant litigation is mistaken. The plaintiffs' claim, brought under § 1983, is not an effort to "relitigate" the fact-finding in the earlier administrative case. Rather, plaintiffs ask the Court to determine whether termination of Section 8 benefits was based on a preponderance of the evidence.

**9.** Defendants have not briefed or pressed the defense of qualified immunity on behalf of the individual defendants. For this reason, the Court defers consideration of whether any of the defendants are entitled to qualified immunity until such briefing and a full record is before the Court.

### ORDER

Defendants' motions to dismiss (Docket Nos. 30 & 32) are **DENIED** with respect to Paragraphs 78(a) and 78(b) of Count 1 and **ALLOWED** as to the remaining claims.