Dale JACKSON, Special Administrator of the Estate of Agnes Jackson Holstein, Petitioner-Appellant,†

v.

EMPLOYE TRUST FUNDS BOARD, Department of Employe Trust Funds, and Elizabeth Holstein Delgass, Respondents-Respondents.

97 CV 3191

Keith SCHOFF, individually and in his capacity as Executor of the Estate of Gretchen Schoff, Plaintiff-Appellant,

v.

EMPLOYEE TRUST FUNDS BOARD, Department of Employe Trust Funds, Eric Stanchfield, in his capacity as Secretary of Employe Trust Funds Board, and Elizabeth Holstein Delgass, Defendants-Respondents.

Court of Appeals

*No. 98–3063. Submitted on briefs July 9, 1999.—Decided September 30, 1999.*

(Also reported in 602 N.W.2d 543.)

†Petition to review denied.

On behalf of the petitioner-appellant and plaintiff-appellant, the cause was submitted on the briefs of *Waltraud A. Arts* and *Lauri Morris* of *Quarles & Brady LLP* of Madison.

On behalf of the respondent-respondent/defendant-respondent, Elizabeth Holstein Delgass, the cause was submitted on the brief of *Michael W. Wilcox* of *Stolper & Wilcox* of Madison.

On behalf of the respondents-respondents/defendants-respondents, the cause was submitted on the brief of *James Doyle*, attorney general, with *L. Jane Hamblen,* assistant attorney general.

Before Dykman, P.J., Eich and Deininger, JJ.

EICH, J. This appeal involves challenges to two decisions of the Employe Trust Funds Board declaring Elizabeth Delgass to be entitled, as the sole surviving beneficiary, to Wisconsin Retirement System death benefits payable on the death of Delgass's sister, Gretchen Holstein Schoff. Both decisions were affirmed by the circuit court on certiorari review.

When Gretchen Schoff first joined the Wisconsin Retirement System in 1958, she was not yet married. She executed a WRS beneficiary form then known as a "Teacher's Affidavit," entering the names of her parents, "Mr. & Mrs. Floyd G. Holstein," as primary beneficiaries, and her sister, "Miss Betty Holstein" (now Elizabeth Delgass), as the secondary beneficiary. The following year, Gretchen married Keith Schoff. Gretchen's mother died in 1967 and, two years later,

her father married Agnes Jackson (Holstein). Gretchen died in 1994 without ever having changed her WRS beneficiary designation.

Keith Schoff and Agnes Jackson Holstein[1] each claim entitlement to all or a part of Gretchen's death benefits. Schoff argues that the decisions confirming Delgass as the beneficiary improperly ignored his marital-property interest in Gretchen's retirement assets. Holstein maintains that because she was "Mrs. Floyd G. Holstein" on the date of Gretchen's death, she fits the beneficiary designation in the 1978 affidavit and is thus entitled to the benefits. Finally, both Schoff and Holstein argue that the trial court erred in denying their motion for default judgment for respondents' failure to timely respond to their certiorari pleadings. We reject their arguments and affirm the judgment and orders in all respects.

## I. Standard of Review

(A) Certiorari Actions Generally. Our standard of review in certiorari proceedings is identical to that of the circuit court, for we review the agency's decision, not the court's. *State ex rel. Staples v. DH&SS*, 136 Wis. 2d 487, 493, 402 N.W.2d 369, 373 (Ct. App. 1987); *Sterlingworth Condominium Ass'n, Inc. v. DNR*, 205 Wis. 2d 710, 720, 556 N.W.2d 791, 794 (Ct. App. 1996). On appeal, we are limited to determining: (1) whether the agency stayed within its jurisdiction; (2) whether it acted according to law; (3) whether the action was arbitrary, oppressive or unreasonable and represented the agency's will and not its judgment; and (4) whether the

---

[1] Agnes Holstein is now deceased and the Special Administrator of her estate is prosecuting the appeal.

evidence was such that the agency might reasonably make the order or determination in question. *See Nielsen v. Waukesha County Bd. of Supervisors*, 178 Wis. 2d 498, 511, 504 N.W.2d 621, 626 (Ct. App. 1993); *State ex rel. Whiting v. Kolb*, 158 Wis. 2d 226, 233, 461 N.W.2d 816, 819 (Ct. App. 1990). The agency's findings will not be disturbed if any reasonable view of the evidence sustains them. *See Snyder v. Waukesha County Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 476, 247 N.W.2d 98, 103 (1976).

(B) <u>Deference to the Board's Legal Conclusions</u>. In ruling that Elizabeth Delgass was the beneficiary of Gretchen's retirement benefits under the provisions of ch. 40, STATS., the Board declined to consider Schoff's argument that various provisions of the Marital Property Act mandated a different result. As we and the supreme court have discussed in several recent cases, courts pay differing degrees of deference to an administrative agency's interpretation of statutes—ranging from "great" deference to no deference at all. In this case, the parties agree that, insofar as the Board's decision may involve the interpretation and application of provisions of the Marital Property Act, we owe that interpretation no deference, for there is no indication that the Board has any special expertise or experience in interpreting and applying those laws. *See Coutts v. Wisconsin Retirement Bd.*, 209 Wis. 2d 655, 664, 562 N.W.2d 917, 921 (1997).

As to the Board's interpretation of the provisions of ch. 40, STATS., relating to the determination of WRS beneficiaries, however, the parties disagree. Schoff and Holstein argue that we should also review those interpretations de novo because the Board "has not had significant experience interpreting the [particular provisions of ch. 40 involved] in similar situations. . . ."

683

Respondents, on the other hand, contend that we owe great deference to the Board's decision because: (a) the legislature has charged the Board with administration of the statutes in question; (b) the Board has experience in interpreting them; and (c) the Board used that experience and expertise in arriving at its decision in this case.

In *Barron Elec. Coop. v. Public Serv. Comm'n*, 212 Wis. 2d 752, 569 N.W.2d 726 (Ct. App. 1997), we described the appropriate application of the "great deference" rule as follows:

> [C]ourts should grant the highest level of deference—"great deference"—to the agency where: (1) it is charged with administration of the statute being interpreted; (2) its interpretation "is one of long-standing"; (3) it employed "its expertise or specialized knowledge" in arriving at its interpretation; and (4) its interpretation "will provide uniformity and consistency in the application of the statute." Where great deference is appropriate, the agency's interpretation will be sustained if it is reasonable—even if an alternative reading of the statute is more reasonable. We also will pay great deference to an agency's interpretation "if it is intertwined with value and policy determinations" inherent in the agency's statutory decisionmaking function.

*Id.* at 760–61, 569 N.W.2d at 731 (internal citations and footnotes omitted).

We also discussed in *Barron* the type of agency decision that is entitled to no deference at all.

> At the low end of the scale are cases in which courts owe no deference what[so]ever to the agency's legal conclusions or statutory interpretations—cases where we consider the issues de novo. We employ a de novo review only "when the issue

> before the agency is clearly one of first impression, or when [the] agency's position on [the] issue has been so inconsistent as to provide no real guidance." In such a situation, "the weight to be afforded [the agency's] interpretation is no weight at all."

*Id.* at 763, 569 N.W.2d at 732 (internal citations omitted).

We are persuaded that the Board's decisions in this case with respect to the provisions of ch. 40, STATS., are entitled to "great weight" deference. First, as respondents point out, the Board is charged by the legislature with administering the chapter. Section 40.03(1)(a) states that the Board "[s]hall authorize and terminate the payment of all . . . death benefits . . . in accordance with this chapter . . ."; and we believe that inherent in this responsibility is the authority to determine the identity of the proper beneficiaries.

██

Second, the Board has a long-standing history of interpreting ch. 40, STATS., and the fact that it may not have encountered the exact—or even substantially similar—factual circumstances in a prior case does not lessen the deference that should be accorded its decision. *Barron*, 212 Wis. 2d at 764, 569 N.W.2d at 732. A principal question in the case relates to the Board's determination that Gretchen Schoff's beneficiary designation complied with the specific requirement of § 40.02(8), STATS., that the designation be "in the form approved by . . . the [D]epartment [of Employe Trust Funds],"[2] and the record reveals that one of the practices the Board has followed for many years is to give effect to all designations once they have been accepted

---

[2] Section 40.02(8), STATS., provides, in pertinent part as follows:

 (a) "Beneficiary" means:

for filing—even if, as appellants claim is the case here, they suffer from technical defects. Additionally, as we discuss in more detail below, the Department and the Board have, over the years, consistently interpreted "Mr. & Mrs." beneficiary designations as relating to the identity of the beneficiaries as of the date of designation. On this record, we are satisfied that the Board's interpretation and application of the provisions of ch. 40, STATS., is entitled to great deference and thus will be affirmed if it is reasonable.[3]

---

1. The person . . . so designated by a participant . . . in the last written designation of beneficiary on file with, and in the form approved by, the department at the time of death . . . .

[3] There is also a slightly lower degree of deference which we will apply in certain situations.

The second level of deference . . .—"due-weight" deference—differs from "great-weight" deference only in slight degree. According to the supreme court, it is appropriate "when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." The deference accorded the agency in this situation "is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question." Giving an agency decision due weight, we will also sustain the agency's interpretation if it is reasonable—even if another interpretation is equally reasonable. We will not do so, however, if another interpretation is more reasonable than the one employed by the agency.

*Barron Elec. Coop. v. Public Serv. Comm'n,* 212 Wis. 2d 752, 762–63, 569 N.W.2d 726, 732 (Ct. App. 1997).

While the difference between "due" and "great" deference is often elusive, it makes little difference in most cases, for in both instances the central question is whether the agency's decision is reasonable. The only difference is that, if due-weight deference is the standard, we will sustain the agency's reasonable determination *unless* an opposing interpretation is more reasonable, while under the great-weight deference rule, the

## II. Marital Property Act

As indicated, we review the Board's interpretation of the Marital Property Act de novo. Schoff argues first that the Board's decision was unreasonable because it failed to consider various provisions of the Act which, he says, entitle him to share in the death benefits even though he is not a named beneficiary.

The parties do not dispute that WRS benefits are subject to the Marital Property Act. Section 766.62(1)(a), STATS., provides that "a deferred employment benefit attributable to employment of a spouse occurring after the determination date is marital property." The parties disagree, however, as to how the Act should be applied to Gretchen's benefits. Schoff argues that the Act prohibits the Department from giving effect to a beneficiary designation which purports to transfer marital property to a third party. Citing § 766.62(3), STATS.,—which states in part that "[o]wnership or disposition provisions of a deferred employment plan which conflict with [the Act] are ineffective between spouses or former spouses or *between a surviving spouse and a person claiming under a deceased spouse's disposition at death*" (emphasis added)—Schoff maintains that confirming the Department's acceptance of Gretchen's 1958 affidavit has the effect of conveying his marital property interest in her WRS benefits to a third party (her sister) and should thus be considered void under § 766.62(3). We think the argument is misplaced.

reasonableness of the agency's interpretation is the *only* question. *Id.* As we indicate, there is no question that the Board's interpretation of ch. 40, STATS., in this case was reasonable; and we are equally satisfied that Schoff's and Holstein's are not. Certainly theirs is not *more* reasonable than the Board's.

We note at the outset that the Board never "interpreted"—or even considered—any particular provision of the Marital Property Act in its decision. It simply ruled that, whatever effect the Act may have with respect to property rights between spouses, it has no effect on the Board's determination of WRS beneficiaries under the specific provisions of ch. 40, STATS.[4] Our independent review of that decision leads us to agree with the Board.

The Board has only such powers as have been expressly granted to it by the legislature or which necessarily may be implied from the statutes under which it operates. *Kimberly-Clark Corp. v. Public Serv. Comm'n*, 110 Wis. 2d 455, 461–62, 329 N.W.2d 143, 146 (1983). And Schoff has pointed us to no authority—either express or implied—suggesting that the Board possesses the power to interpret, apply or enforce the Marital Property Act. The Board's duties are confined to ch. 40—to determine, under applicable provisions of that chapter, whether, in a given case, a particular beneficiary claimant meets the statutory definition of "beneficiary"; *i.e.*, the person designated in writing by a WRS participant in a form approved by the Department. Section 40.02(8)(a), STATS. Whether, under the provisions of other laws which may be applicable to a particular claimant—such as the Marital

---

[4] The Board stated in its decision:

Chapter 766 does not govern the determination of a beneficiary under ch. 40. Chapter 766 sets out the rights to property as between spouses; it does not specifically authorize either the Board or the DETF to make a determination of marital property rights. Chapter 40, however, does expressly authorize the Board and the DETF to pay death benefits to the last written designation of [the] beneficiary on file with, and in the form approved by, the DETF at the time of death—in this case, Elizabeth Holstein Delgass. . . .

Property Act—he or she may have rights or liabilities *vis-à-vis* the deceased and/or another claimant, is a question for another day and another forum. The Board's concern is the administration of ch. 40, and whatever remedies Schoff believes he may have had under the Marital Property Act should have been pursued under the provisions of that law.

■

Among other things, the Marital Property Act grants either spouse the right to manage and control both individual and marital property. Section 766.51, STATS. Included in that grant is the right to make "gifts" to third parties and to select retirement-plan options, including the naming of a beneficiary. Section 766.51(1)(e). And we held in *Socha v. Socha*, 204 Wis. 2d 474, 481, 555 N.W.2d 152, 155 (Ct. App. 1996), that the remedies provided in the Act—in particular, those in § 766.70—constitute the exclusive remedy "for any spouse who disputes such a transfer of marital property." Section 766.70(6)(b), STATS., provides as follows:

> If a transfer of marital property to a 3rd person during marriage by a spouse acting alone becomes a completed gift upon the death of the spouse or if an arrangement during marriage involving marital property by a spouse acting alone is intended to be and becomes a gift to a 3rd person upon the death of the spouse, the surviving spouse may bring an action against the gift recipient to recover one-half of the gift of marital property.

■

The statute goes on to state: "The surviving spouse may not commence an action under this paragraph later than one year after the death of the decedent spouse." *Id.* Not having done so—having instead

attempted to raise his marital-property-law arguments before the Board—Schoff argues that the remedy set forth in the Act (and its one-year limitation) is inapplicable in this case because Gretchen's beneficiary designation, having occurred prior to their marriage, cannot be considered an "arrangement during marriage" within the meaning of § 766.70(6)(b), STATS. It appears from the record, however (and the trial court so determined), that Gretchen never changed the beneficiary designation during her marriage to Schoff, despite receiving periodic notices from the Department of her entitlement to do so. In our view, this is sufficient to meet the "arrangement during marriage" provisions of the Act, and to thus invoke the provisions of § 766.70(6)(b)—including the one-year limitation on actions—as the trial court ruled.

### III. "Statutory Reference Guide"

Schoff and Holstein next argue that the Board, in making its beneficiary decision under ch. 40, STATS., improperly relied on an informal advisory guide prepared and used by Department staff for determining beneficiaries. According to Schoff and Holstein, the guide—designated by the parties as the SRG ("Statutory Reference Guide")—is a "rule" within the meaning of § 227.01(13), STATS., and because it has never been formally promulgated in accordance with statutory rule-making procedures, it is invalid. And they say the Board's improper reliance on the SRG requires reversal of its decision.

■

It appears from the record, however, that the Board did not rely on the SRG in reaching its decision, but acted instead on its interpretation of the provisions of ch. 40, STATS., and its long-standing administrative

practices. In its Final Decision and Order, the Board found that "the designation of beneficiaries in Gretchen Schoff's Teacher's Affidavit is a valid and clear indication of her intent at the time the beneficiaries were designated *with, or without, reference to the SRG*" (emphasis added). The circuit court stated that, in effect, "the Board mooted the plaintiffs' arguments concerning the SRG because [it] would have reached the same ruling even if the SRG was not in existence." We agree.[5]

## IV. Validity of the 1958 Affidavit

Schoff and Holstein next argue that, regardless of the validity of the SRG,[6] Gretchen's 1958 affidavit was technically deficient and thus never should have been accepted for filing by the Department. They point to defects such as her failure to describe her relationship to, and the addresses of, her named beneficiaries, her failure to use her mother's full name, as opposed to "Mrs. Floyd G. Holstein", and her failure to include her

---

[5] Even if not moot, the argument fails because the SRG is not a "rule" within the meaning of § 227.01(13), STATS. Under the statute, a "rule" is, among other things, a regulation "which has the effect of law," and the SRG appears to be something else entirely. The record indicates that it was developed by the Department in 1983 to assist staff in administering the provisions of ch. 40, and that it serves, in the Board's words, as "an explanatory reference aid for the DETF staff." Our review of the SRG leads us to agree with the trial court that it contains "policy and not hard [and] fast rules," and that its language "is couched . . . in terms of advice and guidelines," rather than setting forth law-like pronouncements. Thus, on the merits, we agree with the Board that the SRG is not an invalid unpromulgated rule.

[6] Indeed, as may be seen, they rely on portions of the SRG in support of their own argument.

691

birth date and social security number, as presently required under the SRG. The result is, say Schoff and Holstein, that the designation was not "in the form approved by" the Department as required under § 40.02(8), STATS., and should be disregarded altogether, allowing the death benefits to pass (to them) according to the standard statutory sequence.

Here, too, there is evidence in the record that the Department's policy is, and for many years has been, that once a beneficiary form is filed and accepted by the Department, it is controlling, even if it contains technical defects.[7] While Gretchen's affidavit may not have met current filing requirements under present-day Department guidelines, it is undisputed that it was considered and approved by the then-existing Teachers Retirement Board at the time it was filed in 1958. And while it appears that the Department uses a more rigorous screening process today, the bottom line is that the affidavit was considered to be in appropriate form when the Department (or its predecessor agency) accepted it for filing forty years ago, and the Board could reasonably conclude that it had been "in a form approved by the Department," within the meaning of the statute, given the evidence of departmental practice and procedure just referred to.

## V. Designation of "Mrs. Floyd G. Holstein"

Holstein argues that if the affidavit is valid—which we have concluded it is—she, as the sur-

---

[7] A Department official, Kathleen Connell, testified that "[o]nce we've accepted [the designation form], we would have to pay it out according to the beneficiary designation. This is a guideline on what we would do." She later emphasized that "if we've accepted it in the past, we would pay it out."

viving "Mrs. Floyd G. Holstein," is entitled to Gretchen's death benefits. She claims that Gretchen's lack of specificity in making the designation establishes that she intended that the death benefits go to Floyd Holstein and his wife, or the survivor, "regardless of who occupied the position as Mrs. Floyd G. Holstein at the date of [Gretchen's] death." Again, we disagree.

First, there is nothing in the record which would indicate that Gretchen, when she filed the designation in 1958, intended anyone other than her mother and father—Ester and Floyd Holstein—to be the primary beneficiaries of her death benefits. Certainly she could have, had she so desired, designated subsequent spouses of either parent, or she could have filed a new beneficiary designation upon her mother's death or her father's remarriage—or even her own marriage to Schoff—but she didn't. Beyond that, the Board's decision that Gretchen's intended beneficiary was her mother, Ester, is reasonable because it is consistent with the Department's well-established procedures. There was testimony that the Department has an established procedure for determining beneficiaries when a designation form identifies them as a married couple, such as "Mr. and Mrs. John Jones." When that occurs, the beneficiary is considered by the Department to be the Mr. or Mrs. Jones "as of the date of the beneficiary designation." Additionally, the Department's staff guidelines advise employees how to handle such situations:

> a. Advice—When designating a married woman always use her given first name such as "Mary E. Smith" NOT "Mrs. John Smith" because subsequent

693

divorces and remarriages might raise arguments as to the participant's intent. It will also avoid delay in making payment or making payment to the wrong person.

. . . .

c. Payment—If the beneficiary's birth date is not given, *pay the woman who was the wife on the date the designation was filed, even if there have been subsequent divorces and remarriages*; the participant's intent when the designation was filed controls (emphasis added).

The evidence indicates that the Department has consistently followed this procedure over the years, and we are satisfied that the Board's decision affirming the Department's denial of Holstein's claim was reasonable.

## VI. Motion for Default Judgment

Finally, Schoff and Holstein argue that the case never should have proceeded beyond the pleading stage and that the trial court erroneously exercised its discretion when it denied their motion for default judgment based on their claim that the Board had failed to timely answer their complaint. They contend that the Board had only twenty days in which to answer the complaint and that it missed that deadline by twenty days, filing a response some forty days after being served with the complaint. Respondents maintain that they had forty-five days in which to respond under § 802.06(1), STATS., 1995, and it is not disputed that they met that deadline. The circuit court denied Schoff's and Holstein's motion for default judgment, reasoning that because the applicable statutes were ambiguous, even if respondents didn't timely file their

answer under the statute, they should be relieved from that failure on grounds of excusable neglect. In our view, the only reasonable construction of the statute is that it grants the state or a state agency forty-five days to respond to such a complaint.

Section 802.06(1), STATS., 1995, provides that, while the normal answering time is twenty days, "[t]he state or an agency of the state or an officer, employe or agent of the state in an action brought within the purview of s. 893.82 or 895.46 shall serve an answer to the complaint . . . within 45 days after service of the pleading in which the claim is asserted."[8] Schoff and Holstein read this language as limiting application of the forty-five day rule to actions "within the purview of s. 893.82 or 895.46." Respondents, emphasizing the conjunction "or" separating "the state or an agency" and "an officer, [etc.] in an action [under] s. 893.82" read it as giving two classes of defendants forty-five days to answer: either (a) the state or a state agency, *or* (b) a state agent or employee, if the particular action is one under §§ 893.82 or 895.46, STATS. We agree with respondents. Because the two referenced statutes, §§ 893.82 and 895.46, apply only to claims against individuals—state officers, employees and agents—it makes little sense to discuss them in terms of actions against the state itself. Schoff's and Holstein's argument not only erases the word "or" from the statute, it runs contrary to an informed reading of the statute's provisions. The circuit court did not erroneously exercise its discretion when it denied Schoff's and Holstein's motion for default judgment.

---

[8] In 1998, the legislature amended § 802.06(1), STATS., so that all parties, both state and private, now have forty-five days to answer a complaint.

*By the Court.*—Judgment and orders affirmed.