STATE of Wisconsin, Plaintiff-Respondent,†

v.

HARENDA ENTERPRISES, INC., Defendant-Appellant.

Court of Appeals

*No. 2005AP1829. Oral argument October 3, 2006.
—Decided October 31, 2006.*

2006 WI App 230

(Also reported in 724 N.W.2d 434.)

† Petition to review granted 4/17/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark W. Rattan* of *Litchfield Cavo*, of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Jeffrey M. Gabrysiak*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Harenda Enterprises, Inc., appeals the trial court's grant of summary judgment to the State of Wisconsin imposing environmental penalties and ancillary surcharges in connection with Harenda's inspection of asbestos at the Milwaukee Auditorium under a contract with the Wisconsin Center District's renovation of the Auditorium. *See* WIS. STAT. § 285.87 (air-pollution penalties). The crux of this appeal turns on the language of the applicable federal regulation, adopted by the State, and whether Harenda's testing for asbestos contamination at what the trial court referred to in its order as "an area of the Auditorium identified as the second floor bowl area" complied with that regulation. We conclude that Harenda's testing for asbestos contamination complied with the law, and, accordingly, reverse.

573

## I.

¶ 2. Under rules promulgated by the Wisconsin Department of Natural Resources pursuant to authority granted to it by Wis. Stat. § 285.11(1), *see also* Wis. Admin. Code § NR 447.01, "asbestos-containing material" is defined, as pertinent to our discussion and for the Auditorium area under consideration, as a substance "containing more than 1% asbestos as determined using the method specified in Appendix E to Subpart E, 40 CFR part 763, section 1." Wis. Admin. Code § NR 447.02(1)(b); *see also* Wis. Admin. Code § NR 484.01 (incorporating federal regulations when those regulations are referred to in the rules issued by the Department of Natural Resources set out in, as pertinent here, Wis. Admin. Code ch. NR 447); Wis. Admin. Code § NR 484.04 (incorporating by reference 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1 in, among other rules, § NR 447.02(1)(b)). If asbestos might be released into the air by demolition or remodeling, asbestos exceeding the one-percent limit is characterized by the Department rule as "[r]egulated asbestos-containing material," § NR 447.02(33)(d), and precautions preventing or mitigating such release must be taken, Wis. Admin. Code § NR 447.08. The State charged Harenda Enterprises in this case with relying on the wrong method of assessing the asbestos content of parts of the Auditorium's second-floor-bowl area, so that the necessary precautions were not taken.

¶ 3. As we have seen in the previous paragraph, the Wisconsin Department of Natural Resources adopted 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1 as the way to determine the asbestos content of material pertinent to our discussion. The significant part of that regulation, which the parties agree applies to this appeal, provides:

574

Bulk samples of building materials taken for the identification and quantitation of asbestos are first examined for homogeneity at low magnification with the aid of a stereomicroscope. The core sample may be examined in its container or carefully removed from the container onto a glassine transfer paper or clean glass plate. If possible, note is made of the top and bottom orientation. When discrete strata are identified, each is treated as a separate material so that fibers are first identified and quantified in that layer only, and *then the results for each layer are combined to yield an estimate of asbestos content for the whole sample.*[1]

40 C.F.R. Pt. 763, Subpt. E, App. E, § 1.7.2.1 (emphasis and footnote added).

¶ 4. Broken into its parts as pertinent to this appeal, 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1.7.2.1 establishes the following testing procedure:

(1) The building materials are first examined to see if they are homogenous.

(2) If, on that examination the examiner sees that the material is made up of "discrete strata," the examiner must treat each stratum as "a separate material."

(3) Each discrete stratum "separate material" is examined and the "fibers are first identified and quantified in that layer only."

(4) Once the step in (3) is finished for all the strata, "the results for each layer are combined to yield an estimate of asbestos content for the whole sample."

---

[1] The word "estimate" is an apparent reference to the inability to assure absolute consistency between the assessment made by different examiners of asbestos content in a sample. At oral argument, counsel for the State referred to this inability as "analytical variability," albeit in a context not specifically tied to the word "estimate" in 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1.7.2.1.

Thus, for example, if the material under analysis has three "discrete strata" and the first layer has no asbestos, the second layer has asbestos of two-percent, and the third layer has asbestos of one-half of one percent, the parties agree that, unless the "clarifications" are thrown into the mix, the "asbestos content for the whole sample" is less than one-percent.[2]

¶ 5. The State contends that 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1.7.2.1 cannot be looked at in a vacuum, but, rather, that we must also consider what everyone refers to as "clarifications" that were issued by the United States Environmental Protection Agency. Harenda, on the other hand, argues that § 1.7.2.1 is clear on its face, that the "clarifications" contradict the regulation's unambiguous language, and because, as conceded by the State, the "clarifications" were never adopted by either the federal government or the State pursuant to established rule-making procedures, § 1.7.2.1 must be applied as it is written without resort to the "clarifications," to which we now turn.

¶ 6. On January 5, 1994, the Environmental Protection Agency published in the Federal Register what it called a "clarification" that it said it "intended solely as guidance" and which did "not represent an action subject to judicial review under the section 307(b) of the Clean Air Act or section 704 of the Administrative Procedure Act."[3] 59 Fed. Reg. 542. As pertinent here,

---

[2] Neither of the parties refers us to a rule or regulation that explains whether the combining of the asbestos content of each separate layer "to yield an estimate of asbestos content for the whole sample" is done in reference to the mass, weight, or volume of each layer. Accordingly, we apply the one-percent threshold without further refinement, as do the parties.

[3] Section 307(b) of the Clean Air Act, 42 U.S.C. § 7607(b), deals with the promulgation by the Administrator of the Envi-

that "guidance" suggested the following in connection with the "analysis of multi-layered samples" for asbestos: "In general, when a sample consists of two or more distinct layers or materials, each layer should be treated separately and the results reported by layer (discrete stratum)." *Ibid.* It did not explain what the hedge-phrase "[i]n general" meant.

¶ 7. The Agency issued another "clarification" on December 19, 1995, "to address common questions regarding situations where one or more layers which may contain asbestos are present, and supplement the January 5, 1994 Federal Register clarification (59 FR 542)." 60 Fed. Reg. 65,243. It reiterated, as pertinent here, that under 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1.7.2.1, with exceptions not at issue here, "all multi-layered systems . . . must be analyzed as separate materials, and results were not allowed to be combined to determine average asbestos content (continuing the policy that dilution of an asbestos-containing material is not allowed)." 60 Fed. Reg. 65,243. It further explained:

> If the result of the composite analysis shows that the average content for the multi-layered system (across the layers) is greater than one percent, then the multi-layered system must be treated as asbestos-containing and analysis by layers is not necessary. If the result of the composite sample analysis indicates that the multi-layered system as a whole contains asbestos in the amount of one percent or less, but greater than none detected, then analysis by layers is required to ensure that no layer in the system contains greater than one percent asbestos. If any layer contains greater

ronmental Protection Agency of standards or requirements and judicial review. Section 704 of the Administrative Procedure Act, 5 U.S.C. § 704, provides for judicial review of agency action.

than one percent asbestos, that layer must be treated as asbestos-containing. This will have the effect of requiring all layers in a multi-layered system to be treated as asbestos-containing if the layers can not [*sic*] be separated without disturbing the asbestos-containing layer. Once any one layer is shown to have greater than one percent asbestos, further analysis of the other layers is not necessary if all the layers will be treated as asbestos-containing.

*Ibid.* Without application of the "clarifications," the State concedes that a sample from a multi-layered wall would pass asbestos-content muster if the asbestos-content of each layer averaged together was below the applicable limit even though one or more of the layers has an asbestos content greater than that limit. If the "clarifications" are applied, the multi-layered wall would exceed the applicable limit if any of the layers exceeded that limit. The trial court applied the "clarifications" to interpret 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1.7.2.1, and granted summary judgment to the State.

## II.

¶ 8. Our review of a trial court's grant of summary judgment is *de novo*. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). In assessing an administrative agency's interpretation of the statutes it enforces, we give it varying degrees of deference, depending on the agency's experience and expertise in implementing and applying those statutes. *See UFE Inc. v. Labor & Indus. Review Comm'n*, 201 Wis. 2d 274, 284–287, 548 N.W.2d 57, 61–63 (1996) (discussing the three levels of deference given to an agency interpretation of a statute within its purview: "great weight deference, due weight defer-

ence and de novo review"). Irrespective of what level of deference is appropriate, however, an agency interpretation may not trump a statute's clear language. *See id.*, 201 Wis. 2d at 282 n.2, 548 N.W.2d at 60 n.2 ("The plain meaning of a statute takes precedence over all extrinsic sources and rules of construction, including agency interpretations. For example, even if an agency interpretation is accorded the highest level of deference by a court, great weight, it will not be upheld if the interpretation directly contravenes the clear meaning of the statute."). Similar considerations apply to an agency's interpretation of an administrative rule or regulation. *Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶ 18, 290 Wis. 2d 421, ___, 714 N.W.2d 130, 136–137:

> The interpretation of an administrative code provision is "a question of law subject to independent appellate review." Interpretations of code provisions, and the determination as to whether the provision in question is consistent with the applicable statute, are subject to principles of statutory construction. If a rule is ambiguous, we may resort to extrinsic aids to determine agency intent. In resolving the ambiguity, this court gives deference to an agency's settled "interpretation and application of its own administrative regulations unless the interpretation is inconsistent with the language of the regulation or is clearly erroneous."

(Quoted sources, internal citations, and footnote omitted.)

■

¶ 9. In this case, the Wisconsin Department of Natural Resources applied the "clarifications" of 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1.7.2.1 disseminated by the United States Environmental Protection Agency. Additionally, the State points to a determination by the

Environmental Protection Agency Environmental Appeals Board upholding, without independent analysis, a hearing officer's determination that the "clarifications" were applicable even though it also opined that the "language" of § 1.7.2.1 "appears to provide some support for" an interpretation contrary to those "clarifications." *In re LVI Envtl. Servs., Inc.*, 10 E.A.D. 99, 106, 2001 WL 988722 (Envtl. App. Bd. 2001), *available at* http://www.epa.gov/eab/disk11/lvi.pdf. The "clarifications" are, however, at odds with the clear command of § 1.7.2.1 that the asbestos content for each separate layer in a sample be "combined to yield an estimate of asbestos content for the whole sample." Thus, whatever deference we owe to the Environmental Protection Agency or to the Department of Natural Resources, their interpretation of § 1.7.2.1 is at odds with what the section plainly says. Accordingly, we reverse the trial court's grant of summary judgment to the State.[4]

---

[4] While conceding that it cannot prevail unless the "clarifications" apply, the State argues that to ignore the "clarifications" ignores what the drafters of 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1.7.2.1 intended all along. But, "[o]urs is 'a government of laws not men,' and 'it is simply incompatible with democratic government, or indeed, even with fair government, to have the meaning of a law determined by what the lawgiver meant, rather than by what the lawgiver promulgated.' " *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 52, 271 Wis. 2d 633, 667, 681 N.W.2d 110, 126 (quoted source omitted). The State also contends that ignoring the "clarifications" leads to what it calls an "absurd result" of not requiring asbestos-abatement procedures when the sample as a whole exceeds the one-percent threshold but no separate layer does. This is how the State crystallizes that argument in its brief on appeal:

> For example, if a building that was to be demolished was constructed of walls that were made of 12 inches of styrofoam

*By the Court.*—Judgment reversed.

insulation covered by 1/4 inch of plaster that was 5% asbestos, under Harenda's interpretation of [§ 1.7.2.1], the removal of the material, even though obviously dangerous, would not be subject to Wis. Admin. Code ch. NR 447 safety protections.

That result might, however, be avoided if the asbestos sampling and assessment were tied to mass, weight, or area. See footnote 2, above, pointing out that neither of the parties here has argued that anything but the base percentages should be considered. Moreover, the opposite of the State's hypothetical might also attend and be equally "absurd."

For example, assume a massively thick wall with an extremely thin coat of paint. The massive wall-structure has no asbestos, but the asbestos level in the paint coat is barely more than the one-percent threshold. Under the "clarifications," especially the 1995 "clarification," the entire wall-structure would be "regulated asbestos-containing material" requiring abatement procedures even though the percentage of asbestos in the wall-structure as a whole (including the paint layer) is miniscule. All this reaffirms why the State's concerns, and the consequences of any changes to 40 C.F.R. Pt. 763, Subpt. E, App. E, § 1.7.2.1, must be addressed by either statute or an administrative rule adopted properly with all the attaching safeguards of notice and opportunity for public comment. *See* 5 U.S.C. § 553 (rule-making by federal agencies); *National Labor Relations Bd. v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) ("The rule-making provisions of that Act [the Administrative Procedure Act], which the Board would avoid, were designed to assure fairness and mature consideration of rules of general application.") (Fortas, J., announcing judgment of the Court); Wis. Stat. §§ 227.10–227.30 (rule-making by Wisconsin administrative agencies).