Beverly A. WILLIAMS, Petitioner-Appellant,

v.

INTEGRATED COMMUNITY SERVICES, INC.,
Respondent-Respondent.

Court of Appeals

*No. 2006AP2795. Submitted on briefs April 16, 2007.
—Decided May 24, 2007.*

2007 WI App 159

(Also reported in 736 N.W.2d 226.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Korey C. Lundin, Gai A. Lorenzen, Jeffery R. Myer*, and *Mark A. Silverman* of *Legal Action of Wisconsin, Inc.*, Green Bay.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Randall L. Gast* and *Timothy M. Barber* of *Hanaway Ross, S.C.*, Green Bay.

Before Lundsten, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. The dispositive issue on this appeal is whether Integrated Community Services, Inc. (ICS) correctly construed 24 C.F.R. § 982.553(a)(2)(ii)(A) (2006)[1] in denying Beverly Williams' application for admission to the federal Section 8 Housing Voucher Program. ICS construed the regulation to permit it to deny admission to the program if a guest in Williams' home had engaged in illegal drug activity. The circuit court agreed with this construction and dismissed Williams' petition for certiorari review. We conclude that the conduct that may form a basis for denial of admission to the program under § 982.553(a)(2)(ii)(A) is only that of a household member and not that of a guest. We therefore reverse the circuit court's order and remand with instructions to reverse ICS's decision denying Williams' application.

## BACKGROUND

¶ 2. The Section 8 Housing Voucher Program (officially called the Section 8 Tenant-Based Assistance Housing Choice Voucher Program) was created by Congress "for the purpose of aiding low-income families in obtaining a decent place to live." 42 U.S.C. § 1437f(a) (2000).[2] The United States Department of Housing and Urban Development (HUD) is authorized to enter into contracts with state public housing authorities (housing authority) and fund such agencies for the purpose of

---

[1] All references to the Code of Federal Regulations are to the 2006 version unless otherwise noted.

[2] All references to the United States Code are to the 2000 version unless otherwise noted.

providing rent subsidies for eligible recipients. 42 U.S.C. § 1437f(b). HUD has a contract with the Brown County Housing Authority, which in turn contracts with ICS to administer the program in the Green Bay area.

¶ 3. HUD regulations, found at 24 C.F.R. pt. 982, govern the Section 8 program. Under these regulations, the housing authority takes applications for assistance and approves the applications according to financial and other eligibility criteria. *See* 24 C.F.R. § 982.201 and 24 C.F.R. § 982.553(a). The approved applicant is responsible for locating a suitable rental unit in the private sector and the housing authority must approve the tenancy according to applicable regulations, including approval of the unit, lease, rental rate, and owner. 24 C.F.R. §§ 982.302–306, 24 C.F.R. § 982.308, and 24 C.F.R. § 982.507. The housing authority then enters into a contract with the owner under which it agrees to make payments to the owner in a specified amount to subsidize the rent. 42 U.S.C. § 1437a(a); 24 C.F.R. § 982.311.

¶ 4. Williams applied to ICS for assistance under the Section 8 program. ICS determined that she was not eligible because she "or a member of [her] household [had] been involved in a drug related or criminal activity." Williams was informed that she could request an informal hearing, and she did so.

¶ 5. At the hearing, an ICS representative presented a police report regarding an arrest that had occurred at Williams' residence about four months earlier. The report stated that a person named Leroy Spinks was at the residence when police arrived seeking a different person. Police observed Spinks consuming marijuana in the house in the presence of several other people and arrested him. At the hearing, both Williams,

who was represented by counsel, and the ICS representative assumed that Spinks was a guest rather than a tenant or a member of Williams' household. There was no evidence that Williams was a participant in the drug activity or was aware of it.

¶ 6. The hearing officer issued a written decision upholding the ICS decision to deny Williams' application. The decision stated that, while Spinks' arrest did not lead to a prosecution because of "procedural improprieties," nonetheless he was observed engaging in illegal acts. The officer concluded that it was irrelevant that Spinks was a guest rather than a household member because Williams was responsible for his conduct as a guest. The officer relied on *HUD v. Rucker*, 535 U.S. 125 (2002), which, the officer concluded, "provides public housing authorities the right to evict households for drug related or other criminal activity committed by household members *or* household guests." (Emphasis in original.)

¶ 7. Williams filed a complaint in the circuit court seeking certiorari review of the ICS decision. The circuit court agreed with ICS's argument that it had the authority under the applicable regulations to deny Williams' admission to the program because a guest in her home had engaged in illegal drug activity.[3]

---

[3] The circuit court also decided several other issues against Williams, concluding that: (1) the notice to Williams before the hearing satisfied the requirements of due process; (2) the destruction of the audiotape recording of the hearing did not entitle Williams to judgment in her favor; and (3) the hearing officer properly relied on information contained in the police report. Williams appeals these rulings as well as the ruling on the construction of the federal regulation. Because this last issue is dispositive, we do not address the other issues.

## DISCUSSION

¶ 8. On appeal, Williams contends that ICS and the circuit court erred in their construction of 24 C.F.R. § 982.553(a)(2)(ii)(A) because the regulation plainly does not authorize denial of eligibility because of the conduct of a guest. Section 982.553(a)(2)(ii)(A) provides:

> The PHA [(public housing agency)] *may* prohibit admission of a household to the program if the PHA determines that any household member is currently engaged in, or has engaged in during a reasonable time before the admission:
>
> (1) Drug-related criminal activity;
>
> (2) Violent criminal activity;
>
> (3) Other criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity; or
>
> (4) Other criminal activity which may threaten the health or safety of the owner, property management staff, or persons performing a contract administration function or responsibility on behalf of the PHA (including a PHA employee or a PHA contractor, subcontractor or agent).

(Emphasis in original.)

¶ 9. ICS responds that the permissible reasons for denying eligibility to household members also apply to guests by virtue of 24 C.F.R § 5.100, and in particular, the last sentence:

> *Guest,* only for purposes of 24 CFR part 5, subparts A and I, and parts 882, 960, 966, and 982, means a person temporarily staying in the unit with the consent of a tenant or other member of the household who has express or implied authority to so consent on behalf of

703

the tenant. *The requirements of parts 966 and 982 apply to a guest as so defined.*

(Emphasis added.) As noted above, part 982 governs the Section 8 program; part 966 governs "Public Housing Lease and Grievance Procedure."

¶ 10. ICS acknowledges on this appeal, as it did in the circuit court, that *Rucker*, 535 U.S. 125 (2002), on which the hearing officer relied, does not address 24 C.F.R. § 982.553(a)(2)(ii)(A). Instead, in *Rucker* the Court addressed the statutory provision and implementing regulation that govern terms of the lease and termination of the tenancy. *Id.* at 127–28. 42 U.S.C. § 1437d(*l*)(6) requires housing authorities to "utilize leases which . . . provide that . . . any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control shall be cause for termination of tenancy"; and 24 C.F.R. § 966.4(*l*)(5)(i)(B) substantially tracks this language. The Court concluded that this statute requires lease terms that allow eviction from public housing when a member of the tenant's household or a guest engages in drug-related criminal activity, "regardless of whether the tenant knew, or should have known, of the drug-related activity" and that this was a reasonable policy choice made by Congress. *Rucker*, 535 U.S. at 136. ICS argues that, in spite of the different statute and regulation addressed in *Rucker*, the policy choice expressed in that statute supports its construction of the regulation at issue in this case.

██

¶ 11. On certiorari review we, like the circuit court, are limited to determining: (1) whether the agency stayed within its jurisdiction; (2) whether it acted according to law; (3) whether the action was

arbitrary, oppressive, or unreasonable and represented the agency's will and not its judgment; and (4) whether the evidence was such that the agency might reasonably make the order or determination in question. *Jackson v. Employee Trust Funds Bd.*, 230 Wis. 2d 677, 682–83, 602 N.W.2d 543 (Ct. App. 1999). Williams' challenge to ICS's construction of the federal regulations implicates the second basis for review.

¶ 12. The proper construction of an administrative regulation presents a question of law, which we review de novo. *State v. Harenda Enter., Inc.*, 2006 WI App 230, ¶ 8, 297 Wis. 2d 571, 724 N.W.2d 434 (citation omitted). Our purpose is to ascertain and give effect to the intent of the regulation. *Bar-Av v. Psychology Examining Bd.*, 2007 WI App 21, ¶ 10, 299 Wis. 2d 387, 728 N.W.2d 722 (citation omitted). When construing administrative regulations, we use the same rules of interpretation that we apply to statutes. *Aslakson v. Gallagher Bassett Serv., Inc.*, 2007 WI 39, ¶ 25, 300 Wis. 2d 92, 729 N.W.2d 712. Interpretation of an administrative regulation begins with the plain language of the regulation. *Bar-Av*, 2007 WI App 21, ¶ 10. We give the text its common, ordinary, and accepted meaning, except that we give technical or specially defined words their technical or special definitions. *Id.* As with statutory interpretation, we interpret the language of a regulation in the context in which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related [regulations]; and reasonably, [so as] to avoid absurd or unreasonable results." *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 13. If an administrative regulation is ambiguous, we may resort to extrinsic aids to determine agency intent. *Harenda*, 297 Wis. 2d 571, ¶ 8 (citation omitted). In resolving the ambiguity, we give deference to an agency's settled interpretation and application of its own administrative regulations unless the interpretation is inconsistent with the language of the regulation or is clearly erroneous.[4] *Id.*

---

[4] ICS suggests that we should defer to its interpretation of HUD's regulation, referring to *Ritter v. Cecil County Office of Hous. & Comty. Dev.*, 33 F.3d 323, 327–28 (4th Cir. 1994), for the proposition that "it is appropriate for [an appellate court] to show some deference to a state agency interpreting regulations under the authority of the federally created program." However, beyond this quotation, ICS does not develop an argument in support of deferring to its construction of the HUD regulation. *Ritter* concerned a challenge to a regulation that was adopted by a county public housing agency and approved by HUD to implement a federal regulation. *Id.* at 325. The federal court concluded that, if the county agency regulation was not contrary to the federal regulation, then the court should defer to the county agency's regulation if it was reasonable. *Id.* at 329. This case does not concern a challenge to a HUD-approved ICS regulation, but to the hearing officer's construction and application of a HUD regulation. ICS does not discuss the principles that courts apply under Wisconsin law to determine if they should defer to a state or local administrative agency's construction of a federal statute or regulation, and, if so, what level of deference. *See, e.g., DWD v. LIRC*, 2006 WI App 241, ¶¶ 18–19 and n.6, 297 Wis. 2d 546, 725 N.W.2d 304; *Gould v. DHSS*, 216 Wis. 2d 356, 371–74, 576 N.W.2d 292 (Ct. App. 1998). In addition, an adequate discussion of whether we should defer to ICS's construction of the HUD regulation in this case would have to take into account the fact that ICS's construction is inconsistent with the HUD commentary that we conclude is dispositive of HUD's intent in promulgating the regulation. *See infra* at ¶¶ 19–21. Because ICS's argument that we should

706

¶ 14. Turning to the language of 24 C.F.R. § 982.553(a)(2)(ii)(A), we see that it does not refer to "guest," but instead to "any household member." "Household" is defined separately from "guest" in 24 C.F.R § 5.100: *"Household,* for purposes of 24 C.F.R part 5, subpart I, and parts 960, 966, 882, and 982, means the family[5] and PHA-approved · live-in aide." (Footnote added.) Reading the definitions of "guest" and "household" together, there is no question that they refer to two distinct categories of persons.[6] Thus, when 24 C.F.R. § 982.553(a)(2)(ii)(A) is read alone, it plainly applies only to household members and not to guests.

¶ 15. ICS argues that the last sentence of the "guest" definition—that the "requirements of parts 966 and 982 apply to a guest as so defined"—means that, whenever there is a requirement for household members or, presumably other persons in part 982, the requirement also applies to a guest. Applying this meaning to 24 C.F.R. § 982.553(a)(2)(ii)(A), ICS contends that the permissible reason for denying eligibility —that "any household member is currently engaged in or has engaged in during a reasonable time before the admission . . . [d]rug-related activity"—applies to guests as well as household members.

¶ 16. There are significant problems with ICS's construction. First, the permissive authority for a housing authority to deny eligibility for a particular reason is not easily understood as a "requirement." In contrast

defer to its construction is not adequately developed, we do not discuss it further.

[5] "Family" is defined in 24 C.F.R. § 982.4(b) as "a person or group of persons as determined by the PHA, approved to reside in a unit with assistance under the program."

[6] As noted above, the parties at the hearing both referred to Spinks as a guest, and ICS has never taken the position that he was a household member.

to 24 C.F.R. § 982.553(a)(2)(ii), para. (a)(1) and subd. (a)(2)(i) *require* the authority to deny eligibility for specified reasons.[7] While the absence of situations that

[7] 24 C.F.R. § 982.553(a)(1) and (a)(2)(i) provides:

(a) *Denial of admission*—(1) *Prohibiting admission of drug criminals.* (i) The PHA *must* prohibit admission to the program of an applicant for three years from the date of eviction if a household member has been evicted from federally assisted housing for drug-related criminal activity. However, the PHA may admit the household if the PHA determines:

(A) That the evicted household member who engaged in drug-related criminal activity has successfully completed a supervised drug rehabilitation program approved by the PHA; or

(B) That the circumstances leading to eviction no longer exist (for example, the criminal household member has died or is imprisoned).

(ii) The PHA must establish standards that prohibit admission if:

(A) The PHA determines that any household member is currently engaging in illegal use of a drug;

(B) The PHA determines that it has reasonable cause to believe that a household member's illegal drug use or a pattern of illegal drug use may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents; or

(C) Any household member has ever been convicted of drug-related criminal activity for manufacture or production of methamphetamine on the premises of federally assisted housing.

(2) *Prohibiting admission of other criminals*—(i) *Mandatory prohibition.* The PHA *must* establish standards that prohibit admission to the program if any member of the household is subject to a lifetime registration requirement under a State sex offender registration program. In this screening of applicants, the PHA must perform criminal history background checks necessary to determine whether any household member is subject to a lifetime sex offender registration requirement in the State where the housing is located and in other States where the household members are known to have resided.

(Emphasis original.)

708

*mandate* denial might reasonably be called "require-ments" for eligibility, it is questionable that the same is true for situations that merely *permit* denial. Second, there are many provisions in parts 966 and 982 that impose requirements on the housing authority, tenants,[8] and landlords that cannot reasonably be read to apply to guests. As examples, 24 C.F.R. § 982.54(a) requires the housing authority to "adopt a written administra-tive plan that establishes local policies for administra-tion of the program in accordance with HUD require-ments"; and 24 C.F.R. § 982.308(b) requires the tenant and landlord to enter into a lease containing certain provisions. Thus, it is clear not *all* "[t]he requirements of parts 966 and 982 apply to a guest as so defined."

¶ 17. Finally and most significantly, some provi-sions in 24 C.F.R. § 966 and § 982 do refer to both "guest" and "household" members. For example, the public housing lease regulation implementing the stat-ute discussed in *Rucker* does so, *see* 24 C.F.R. § 966.4(*l*)(5)(i)(B),[9] as does the counterpart regulation on lease requirements for Section 8 tenants. *See* 24 C.F.R. § 982.310(c)(1).[10] *See also* 24 C.F.R. § 982.306(c)(5) (permitting the housing authority to

---

[8] 24 C.F.R. § 982.4(b) defines " 'tenant' as "[t]he person or persons (other than a live-in aide) who executes the lease as lessee of the dwelling unit."

[9] 24 C.F.R. § 966.4(*l*)(5)(i)(B) provides:

> (B) *Drug crime on or off the premises.* The lease must provide that drug-related criminal activity engaged in on or off the premises *by any tenant, member of the tenant's household or guest,* and any such activity engaged in on the premises *by any other person under the tenant's control,* is grounds for the PHA to terminate tenancy.

(Emphasis added.)

[10] 24 C.F.R. § 982.310(c)(1) provides in part:

deny approval of a rental unit if the owner has a history of failing to terminate tenants because of proscribed activity engaged in by "*the tenant, any member of the household, a guest or another person under the control of any member of the household* ...."). (Emphasis added.) Notably, "guest" (as well as "other person under the tenant's control"[11] or "other person under the control of any household member") appears where the subject is proscribed conduct during the tenancy, while those terms are omitted in 24 C.F.R. § 982.553 where the subject is denial of admission to the program. It is difficult to understand why HUD would expressly refer to "guest" in the former regulations but omit "guest" in § 982.553 if HUD intended § 982.553 to include guests.

¶ 18. Williams' proposed construction of the last sentence of the "guest" definition is that it simply means that, whenever "guest" is used in parts 24 C.F.R. § 966

> (c) *Criminal activity*—(1) *Evicting drug criminals due to drug crime on or near the premises.* The lease must provide that drug-related criminal activity engaged in, on or near the premises *by any tenant, household member, or guest,* or such activity engaged in on the premises *by any other person under the tenant's control,* is grounds for the owner to terminate tenancy.

(Emphasis added.)

[11] "Other person under the tenant's control" is defined in 24 C.F.R. § 5.100:

> *Other person under the tenant's control,* for the purposes of the definition of *covered person* and for parts 5, 882, 966, and 982 means that the person, although not staying as a guest (as defined in this section) in the unit, is, or was at the time of the activity in question, on the premises (as *premises* is defined in this section) because of an invitation from the tenant or other member of the household who has express or implied authority to so consent on behalf of the tenant. Absent evidence to the contrary, a person temporarily and infrequently on the premises solely for legitimate commercial purposes is not *under the tenant's control.*

and § 982, the definition in 24 C.F.R. § 5.100 applies. However, this reading renders the sentence superfluous because § 966.2 and § 982.4 each specifically incorporate certain definitions from § 5.100, including "guest" and "household," into part § 966 and part § 982, respectively.

¶ 19. We conclude the meaning of the last sentence of the "guest" definition is ambiguous. We cannot determine its meaning from the text of that definition considered alone or in conjunction with the text of related provision. We therefore turn to HUD's commentary in the Federal Register accompanying the publication of the regulations. Screening and Eviction for Drug Abuse and Other Criminal Activity; Final Rule, 66 Fed. Reg. 28,776 (May 24, 2001) (codified at 24 C.F.R. pts. 5 et al.). The publication of the final rule was preceded by publication of a proposed rule and an opportunity for public comment. HUD's responsive commentary directly addresses the distinction in treatment between screening applicants and terminating tenancies:

> *Comment.* Several commenters noted that § 982.553(c) uses the term "household member" as opposed to "covered person"; stated that the same problem is found in § 982.310(c)(1)(B) and (c)(3); and questioned where there is any significance to that difference in terminology.
>
> *Response.* The statutory restrictions on admission pertain to members of the household, while most (but not all) provisions relating to the termination of tenancy refer to actions by the broader category of "covered person"[12] (which includes tenants, guests, and "other persons under the tenants control"). . . . The sections in the final rule that apply only to termination of

---

[12] "Covered persons" is defined in 24 C.F.R. § 5.100 for purposes of parts 966 and 982 to mean "a tenant, any member of the tenant's household, a guest or another person under the tenant's control."

tenancy use the term "covered person," except that, in some cases where the proposed rule referred to "covered person," the final rule differentiates between tenants, household members and guests and "other persons" in order to clarify potential tenant responsibility for the off-premises actions of others.

*Id.* at 28, 784–28, 785 (footnote added).

¶ 20. This responsive commentary by HUD clearly expresses its intent that the group of persons whose conduct must or might prevent admission to the program is narrower than the group of persons whose conduct must or might result in termination of the tenancy: the former includes only household members while the latter includes tenants, guests, and other persons under the tenant's control. Thus, HUD made a deliberate policy choice in omitting "guest" (and "any other person under the tenant's control") from 24 C.F.R. § 982.553, which governs denial of admissions: HUD chose not to require and not to permit a housing authority to deny admission to the Section 8 program because of drug-related criminal activity—or other specified criminal activity—engaged in by a guest.

¶ 21. Because HUD clearly intended not to include guests in 24 C.F.R. § 982.553, it is not reasonable to read the last sentence of the "guest" definition as requiring this result. ICS's proposed construction of that sentence would obliterate the distinction that HUD chose to adopt. Whether the last sentence of the "guest" definition is indeed superfluous or has some other meaning is not a question we need to resolve.

## CONCLUSION

■

¶ 22. We conclude that 24 C.F.R. § 982.553(a)(2)(ii)(A) applies to household members,

which it expressly refers to, and not to guests, which it does not refer to. This is the intent of HUD, the agency promulgating the regulation. ICS therefore did not have the authority to deny Williams' admission to the program because of the conduct of Spinks, who was not a household member. Accordingly, we reverse the circuit court's order and remand with instructions to reverse ICS's decision denying Williams' application.

*By the Court.*—Order reversed and cause remanded with directions.